618 So.2d 1296 (1993)
James M. WRIGHT, Louise T. Wright, Billy Ross Wright, George E. Moody and Michael Welch,
v.
ALLSTATE INDEMNITY COMPANY.
No. 89-CA-1167.
Supreme Court of Mississippi.
May 20, 1993.
*1297 Edward J. Bogen, Jr., McGee & Bogen, Leland, Robert S. Crump, III, Jacobs Eddins Povall Meador & Crump, Cleveland, for appellant.
Frank W. Hunger, Marian S. Alexander, Lake Tindall Firm, Greenville, for appellee.
Before DAN M. LEE, P.J., and PITTMAN and BANKS, JJ.
DAN M. LEE, Presiding Justice, for the court:
On January 19, 1989, George E. Moody and Michael Welch (Welch), the sons and wrongful death beneficiaries of Allene D. Welch, brought a wrongful death complaint against Billy Ross Wright in the Circuit Court of Washington County, Mississippi, asking for $500,000.00 in compensatory damages and $500,000.00 in punitive damages. Allstate Indemnity Co. (Allstate) filed a separate action whereby it sought a declaratory judgment under M.R.C.P. 57 contending it had no liability and owed no duty to defend under the terms of a homeowner's policy it had issued to the father and stepmother of Billy Ross Wright.
On September 12, 1989, the Circuit Court of Washington County, Mississippi, entered summary judgment in favor of Allstate against James M. Wright, Louise T. Wright, and Billy Ross Wright. The judgment held that James Wright, who had purchased the homeowner's policy on November 12, 1987, had no insurable interest in the property where the liability in question arose. The judgment further found that no coverage was ever extended to Billy Ross Wright by virtue of the policy.

FACTS
In the fall of 1987, Billy Ross Wright wanted to purchase a house at 753 Kerry Street, Greenville, Mississippi, and successfully negotiated the sale with the real estate agent. Having a poor credit history and being a convicted felon, however, Billy Ross doubted that he would be able to secure a loan in his own name. He therefore arranged to have his father, James M. Wright, and his stepmother, Louise T. Wright, purchase the home on his behalf.
James and Louise Wright lived at 996 Caldwell Drive, Greenville, Mississippi. They took out a loan from State Mutual Federal Savings and Loan and purchased the home for Billy Ross located at 753 Kerry Street, some 3 miles away. Billy Ross agreed to give James the money necessary to make the monetary payments on his behalf and to pay the taxes and insurance. This agreement was not reduced to writing.
James and Louise were told at the savings and loan that in order to secure a loan, they had to procure insurance on the Kerry Street house. The lending institution sent Allstate agent Will Jenkins over to James and Louise's home on 996 Caldwell Drive to sell the elder Wrights the necessary insurance. James and Louise had a separate homeowner's insurance policy on their Caldwell Drive home, with another company. Jenkins had not sold them any insurance prior to this time.
Agent Jenkins asked James and Louise Wright several questions while he was at their Caldwell Drive home and he filled out the application for the homeowner's policy. James and Louise signed the application at the conclusion of the meeting.
Agent Jenkins said that James and Louise told him that they would be moving into the Kerry Street home. Allstate claimed the insureds thus misrepresented their plans to their agent and, accordingly, that it had a right to avoid coverage.
James Wright contended that he told Jenkins that his son, Billy Ross, would be living in the Kerry Street house, and that he and his wife, Louise, had no intention of *1298 moving there themselves. The Wrights claimed that since knowledge imparted to the insurance agent would be imputed to the insurer, Billy Ross is the person for whom the insurance was purchased, and Billy Ross' household is the insured household under the terms of the insurance policy.
On November 13, 1987, Allstate issued homeowner's policy number XXXXXXXXX to James and Louise Wright, covering the house at 753 Kerry Street. The policy was designated "Deluxe Homeowner's  Primary Residence," and premiums were calculated as if James and Louise were the owners and occupants of the Kerry Street house.
The policy provided personal liability coverage for claims made or suits brought against an insured for damages because of bodily injury or property damage, and medical payments to others resulting from an accident to a person off the insured location if the bodily injury was caused by actions of the insured. Policy limits for personal liability were $50,000.00, medical payments to others were $500.00, and the policy term was from November 5, 1987, through November 5, 1988. On the back of the insurance application, Jenkins wrote "Just Moving In," but didn't state whether this notation referred to James and Louise or to Billy Ross.
Billy Ross Wright, his girlfriend, Jewel Cork, and three minor children moved into the Kerry Street house. Each month Billy Ross paid his father, James, a sum greater than the total of the house note, taxes, and insurance payments due. Before this transaction, Billy Ross had been paying his father, James, living expense money every month, allegedly out of love and affection. James said in his deposition that this money, in excess of the house purchase expenses, was a continuation of this prior practice and was not considered by him or by Billy Ross to be rent. James took the money Billy Ross tendered to him and paid the house notes, insurance premiums, and taxes, keeping the excess for himself.
On July 6, 1988, at the request of Billy Ross, James and Louise went to the office of Billy Ross's attorney, Josh Bogen, in Leland. Bogen had drawn up a quitclaim deed from James and Louise to Billy Ross for the Kerry Street house. James and Louise signed the quitclaim deed, and Bogen locked it up in his safe. The deed was never recorded.
In his affidavit, James Wright stated:
The purpose of the execution of the quitclaim deed was to protect Billy in the event something should happen to me or my wife. Both my wife and I have children by different marriages and we did not want the property to get tied up in a dispute between our other children. It was our understanding at the time the quitclaim deed was executed at Mr. Bogen's office that Mr. Bogen would retain the deed in his possession, not to be recorded unless my wife or I died or we otherwise instructed Mr. Bogen to record the deed.
After the deed was executed in Mr. Bogen's office, I have continued to this day to make payments for insurance to Allstate and for property taxes. To this date, we have never instructed Mr. Bogen to record the deed to Billy Ross Wright and we do not have any present intention of doing so, except in the event of our deaths.
On Halloween night, October 31, 1988, Billy Ross Wright stood in the front yard of the Kerry street house and shot at a passing car. He claimed the occupants of the vehicle first shot at him. The bullet traveled across the street and into the home of Allene D. Welch (Mrs. Welch), a 66-year-old widow, who lived at 752 Kerry Street. Mrs. Welch was lying in bed watching television. The bullet struck her in the head and killed her.
On January 19, 1989, George E. Moody and Michael Welch (Welch), the sons and wrongful death beneficiaries of Mrs. Welch, brought a wrongful death complaint against Billy Ross Wright in the Circuit Court of Washington County, Mississippi, asking for $500,000.00 in compensatory damages and $500,000.00 in punitive damages.
*1299 On February 21, 1989, Allstate filed a complaint for declaratory judgment in the Washington County Circuit court, alleging:
 The policy was void ab initio because James and Louise Wright misrepresented to Allstate agent Jenkins that they would be living in the Kerry Street home when they intended for Billy Ross Wright to be the resident there;
 Alternatively, Allstate had no liability under the policy because Billy Ross Wright was not a member of the household of the named insureds, James and Louise Wright;
 Allstate had no liability because Billy Ross Wright was a renter, and consequently, the property was not covered due to the business pursuits exclusion clause of the policy, which excluded coverage of rental property; and,
 As a consequence of the foregoing allegations, Allstate had no duty to defend Billy Ross Wright and had no liability regarding the shooting death of Ms. Welch.
The homeowner's policy excluded bodily injury and property damage arising out of business pursuits of any insured. The policy defined "insured" to include "you and the following residents of your household: your relatives"; "insured location" was defined as "[t]he resident premises" and also as "[t]he part of any other premises, other structures and grounds used by you as a residence and which is shown in the declarations or which is acquired by you during the policy period for your use as a residence"; "residence premises" was defined as meaning "the one or two family dwelling, other structures and grounds or that part of any other building where you reside and which is shown as the `residence premises' in the declaration." These definitions are not in dispute. Rather, they are offered for a more precise understanding of the Circuit Court rulings that follow:
There is a dispute as to whether Billy Ross Wright ever "rented" or "owned" the property during this period, as to any requirement that the named insureds were to actually occupy the insured premises and as to the meaning or application of the policy.
* * * * * *
Billy Ross Wright had possession of the property. There was nothing that needed to be done to complete the transfer as between the grantors and the grantee. Finding that there was a transfer of title from James and Louise Wright to Billy Ross Wright, there is no reason to address the issue of rent.
* * * * * *
There is no ambiguity as concerns this situation; Billy Ross Wright was not a member of James Wright's "household".
The only other questions remaining involve what was told to Will Jenkins, Allstate's agent, at the time the application was made and what, if any, effect this would have on the policy. On this issue there is certainly a conflict as to the facts.
* * * * * *
Obviously, Billy Ross Wright would have failed the credit check and Allstate would have denied coverage.
* * * * * *
The application for insurance is signed by James Wright and answers the question, "Does owner live in the building?" in the affirmative. The only logical conclusion that can be drawn from the record before the Court is that Mr. Jenkins had not been told prior to November 5, 1987, the issue date of the policy, that Billy Ross Wright and his family would be living in the house as opposed to Mr. and Mrs. James Wright.

* * * * * *
Since Billy Ross Wright was not a member of the household, he was not covered as to liability regardless of what Mr. Jenkins might have known.
* * * * * *
[The Court] finds that as a matter of law there was a valid transfer of the title of said property from James M. and Louise T. Wright prior to the incident, and no allegation has been made that Allstate gave its written consent to an *1300 assignment of the policy. Therefore, Billy Ross Wright's actions were not covered by the policy, and there is no genuine issue of material fact.
IT IS, THEREFORE, ORDERED AND ADJUDGED that Summary Judgment be, and the same is hereby, granted to Allstate Indemnity Company, and that any rights existing under the terms of the policy terminated on July 6, 1988, and further that no liability coverage ever extended to Billy Ross Wright by virtue of said policy.
The only issue to be resolved on this appeal is whether the summary judgment set out above was properly granted. The existence of material issues of fact, as demonstrated in the remainder of this opinion, amply show that the grant was premature. See M.R.C.P. 56. Therefore, the case must be reversed and remanded.

I. A Material Question of Fact Exists with Regard to Coverage.
The first question that must be answered to resolve this dispute is whether there was an Allstate insurance policy in effect at the time of the shooting that covered either James Wright or Billy Ross Wright. This question can only be answered by resolving the disputed factual contentions of the parties. Accordingly, the grant of summary judgment was premature.
The following are illustrative of the fact questions that preclude summary judgment. We emphasize that by labeling these as material we do not intend to suggest or endorse any liability.
James and Louise Wright's names appear on the policy as the insureds. They signed the application for insurance. The address listed on the policy for the insured premises is 753 Kerry Street, a house James and Louise Wright never lived in, but had purchased for Billy Ross Wright to live in at the time the policy was issued. Insurance agent Jenkins filled out the policy at the Caldwell Drive residence after James and Louise Wright answered the questions he asked them.
In his order granting summary judgment dated September 12, 1988, the Circuit Court judge correctly stated that questions remained regarding "what was told to Will Jenkins, Allstate's agent, at the time the application was made and what, if any, effect this would have on the policy. On this issue there is certainly a conflict as to the facts." Nevertheless, the judge proceeded to decide this issue upon sharply disputed facts. This was error pursuant to M.R.C.P. 56. This Court has stated:
A motion for summary judgment lies only where there is no genuine issue of material fact; summary judgment is not a substitute for the trial of disputed fact issues. Accordingly, the court cannot try issues of fact on a Rule 56 motion; it may only determine whether there are issues to be tried.

Brown v. Credit Center, Inc., 444 So.2d 358, 362 (Miss. 1983) (emphasis in original).
More recently we have said:
Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says just the opposite.
Short v. Columbus Rubber and Gasket Corp., 535 So.2d 61, 63 (Miss. 1988), citing Dennis v. Searle, 457 So.2d 941, 944 (Miss. 1984).
James Wright swears he told Jenkins that Billy Ross was the person who would be living in the Kerry Street home. Jenkins swears James told him that James and Louise Wright were to be living there. Thus the lower court was presented with a classic case requiring a jury determination of disputed issues of fact.
The lower court order determined: "The only logical conclusion... is that Mr. Jenkins had not been told ... that Billy Ross Wright and his family would be living in the house as opposed to Mr. and Mrs. James Wright." There is another logical conclusion, that being that Jenkins was told by James Wright that Billy Ross would be living in the Kerry Street house. The Circuit Court judge erred in making this determination himself. Short, Dennis, Brown, supra; Lowery v. Guaranty Bank and Trust Co., 592 So.2d 79, 81 (Miss. 1991); *1301 Newell v. Hinton, 556 So.2d 1037, 1041 (Miss. 1990); and Allison v. State Farm Fire & Cas. Co., 543 So.2d 661 (Miss. 1989).
Furthermore, a disputed question of fact exists concerning whether Jenkins accurately wrote down the answers of James and Louise Wright when he filled out their insurance application as contended by Allstate or whether he filled out the application in his own words in order to close the sale of insurance and get his commission as contended by the Wrights.

II. A Material Question of Fact Exists as to Delivery.
Allstate contends that the quitclaim deed executed July 6, 1988 by James and Louise Wright to Billy Ross Wright acted to effectively convey the Kerry Street home. According to Allstate, the senior Wrights had no insurable interest in the home at the time of the shooting because they had previously conveyed the property to Billy Ross.
In his order of September 12, 1989, the circuit court judge found, inter alia:
There was nothing that needed to be done to complete the transfer as between the grantors and the grantee. Finding that there was a transfer of title from James and Louise Wright to Billy Ross Wright, there is no reason to address the issue of rent.
Of course the intent of the parties regarding the delivery of the quitclaim deed is a question of fact and therefore improper for summary judgment. However, James Wright remained liable on the note secured by the mortgage and thus had an insurable interest in the house regardless of the effectiveness of the deed.
The existence of the factual questions discussed above absolutely precluded a grant of summary judgment in this case Therefore, the decision of the lower court must be and is reversed.
REVERSED AND REMANDED TO WASHINGTON COUNTY CIRCUIT COURT FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.
HAWKINS, C.J., PITTMAN, McRAE and JAMES L. ROBERTS, Jr., JJ., concur.
HAWKINS, C.J., specially concurs with separate written opinion joined by SMITH, J.
BANKS, J., concurs with separate written opinion joined by PRATHER, P.J., and SULLIVAN, J.
HAWKINS, Chief Justice, specially concurring:
I concur in reversal of this case solely on the question of whether there had been a waiver of the policy provisions, however tenuous the contention. Billy Wright was clearly never insured under the provisions of the policy, because under no stretch of the imagination was he, Billy Ross Wright, a member of the household of James M. and Louise T. Wright.
SMITH, J., joins this opinion.
BANKS, Justice, concurring:
The majority opinion finds fault with the summary judgment entered by the trial court on two grounds: 1) there remains a factual dispute as to whether Jenkins was told that Billy Ross Wright would be residing at the insured house, and 2) there remains a factual dispute as to whether the deed was delivered. Implicit in the opinion is that these facts are material to a determination whether Billy Ross Wright is an insured. I write to add a few thoughts on that issue.
The majority would hold that, if Jenkins was told by James that Billy Ross would be living in the house, Billy Ross would be insured. That is not necessarily so. Resolving this fact in favor of the claimants does not help them, unless we determine that Billy Ross Wright is or may be a part of James Wright's household. Billy Ross Wright was a 32-year-old, self-supporting, adult son living under a separate roof with his girl friend. Allstate urges that these facts dictate the conclusion, as a matter of law, that Billy is not a member of James' household.
Allstate acknowledges that we have said that "the abstract definition of the term *1302 `household' is valueless unless it be defined in accordance with the intent and purpose of the word as used in the particular matter under consideration." Goens v. Arinder, 248 Miss. 806, 161 So.2d 509 (1964). Nevertheless, Allstate relies upon Goens and other cases, all involving automobile policies, which find that under the circumstances there obtaining a person was or was not a resident. We have held that an estranged husband residing in a different city is not a resident of his wife's household or vice-versa for purposes of his liability coverage while driving his wife's uninsured vehicle. Fleming v. Travelers Ins. Co. 206 Miss. 284, 39 So.2d 885 (1949). We have found a grown, married daughter residing temporarily with her parents while awaiting completion of her own house and the birth of her daughter to be not a resident for similar purposes. Goens v. Arinder, 248 Miss. 806, 161 So.2d 509 (1964). Finally, we have held that a mother-in-law residing with her child and spouse for nineteen years in her own home and thereafter in theirs, was a family member of the children's household. Perry v. Southern Farm Bureau Insurance Company, 251 Miss. 544, 170 So.2d 628 (1965). Because these cases all involve automobile exclusionary clauses and different factual scenarios, they aid us little.
Appellants also rely upon the general principle, that the term "household" must be construed in the context of the particular situation and policy and urge that we look to the decisions of other states treating the term in the context of a homeowners policy. In Wrigley v. Potomac Insurance Company, 504 N.Y.S.2d 324, 122 A.D.2d 361 (1968), co-owners of the dwelling in question resided in another state and used the dwelling in question on an average of two to seven days per year. Grown relatives of the insured owners resided in the dwelling full time. After a fire loss the insurer refused coverage on the personal property of the relatives claiming that they were not members of the insureds' household. The New York appellate court, construing the provision "broadly" because to do so would extend coverage, held that because the dwelling was insured as a secondary dwelling, the term "household" as used in that policy referred to that dwelling as opposed to the primary dwelling of the named insureds. Id. 504 N.Y.S.2d at 326.
Appellants also cite two cases in which minor children residing with their mother separate from their father were members of the father's household. In Schaut v. Fireman's Insurance Company of Newark, New Jersey, 515 N.Y.S.2d 60, 130 A.D.2d 477 (1987), the husband had purchased insurance for the dwelling in which the wife and two minor sons, but not he, resided and the question was whether one of the sons was a member of the husband, named insured's, household so that the son's negligent act was covered. In Mazzilli v. Accident & Casualty Insurance Company of Winterthur, Switzerland, 35 N.J. 1, 170 A.2d 800 (1961), the wife and minor son resided in a separate structure on the same parcel of property as the husband and the question was whether the wife, held liable for her son's shooting of the plaintiff, was a resident of the husband's household. In both instances the court held in the affirmative.
Allstate asserts that we have determined that the question "what is a household" is one of law and that we, therefore, need not look to cases of other jurisdictions. This is a curious contention at best. Suffice it to say, that where we have held that a term must be construed in accordance with the intent of the parties in the particular context of usage the question is one of fact. Rice Researchers, Inc. v. Hiter, 512 So.2d 1259, 1267 (Miss. 1987); Wade v. Williams, 517 So.2d 573, 576 (Miss. 1987).
Allstate also urges that Wrigley is distinguished because it involves a policy on what was acknowledged to be a secondary residence and that Schaut and Mazzilli are distinguished because they involved minor children. When we focus upon the fact that Wrigley involved an acknowledged secondary residence, the question of what James Wright told Allstate's agent becomes material to the question whether household in this instance means the insured residence for liability purposes. While Schaut involved only the minor *1303 child, we note that in Mazzilli, the person extended coverage was not the child shooter but the mother against whom the judgment was rendered for her own negligence. We recognize that the husband's obligation of support may be a significant factor in making determinations of insurance coverage, and that in Mazzilli, the separate residence was within the curtilage of the primary residence. Nevertheless, the guiding principle from these cases is that the term "household" is not viewed in the abstract, and it will be given a broad interpretation in favor of coverage. Wrigley, 504 N.Y.S.2d at 325; Mazzilli, 170 A.2d at 804.
In order to be an insured Billy Ross would have to be a member of James Wright's household under the terms of the policy. The question of whether he was is a matter to be determined by the factfinder in view of the intent of the parties at the time that the policy was contracted.
I also agree with the majority that the trial court overreached in determining that Allstate was entitled to summary judgment. There are material facts in dispute on the question whether James behaved fraudulently in obtaining the property and whether he violated the terms of the policy by renting the property. The crucial issue for the trial court was whether James relinquished any insurable interest by deeding the property to Billy Ross. It is clear that there is a material dispute as to delivery of the deed.
I would hold that there are material facts in dispute as to whether Billy is an insured, as well as, to whether James maintained an insurable interest in the liability provisions of his policy for coverage for any theory of liability which would attach to James.
PRATHER, P.J., and SULLIVAN, J., join this opinion.