IN THE SUPREME COURT OF MISSISSIPPI
NO. 2003-CA-01796-SCT

*GLORIA MERCER*

*v.*

*PROGRESSIVE GULF INSURANCE COMPANY*

| | |
|---|---|
| DATE OF JUDGMENT: | 6/13/2003 |
| TRIAL JUDGE: | HON. ANDREW K. HOWORTH |
| COURT FROM WHICH APPEALED: | TIPPAH COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | B. SEAN AKINS |
| | BART ADAMS |
| ATTORNEY FOR APPELLEE: | MARTHA BOST STEGALL |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED - 07/29/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., EASLEY AND RANDOLPH, JJ.**

**EASLEY, JUSTICE, FOR THE COURT:**

**STATEMENT OF THE CASE**

¶1.     In this insurance coverage dispute this Court is requested to determine if a trial court correctly granted a summary judgment for an insurer on the issue of whether Gloria Mercer (Mercer) was a member of her father's household for uninsured motorist insurance purposes. On November 14, 2001, Mercer was injured in an automobile accident. At the time of the accident, Mercer was driving her 1992 Oldsmobile, not insured by her father's policy, and was hit by an uninsured motorist. Mercer's father, John Paul Jones (Jones), had an automobile insurance policy with Progressive Gulf Insurance Company (Progressive). Following her

accident, Mercer made a claim under her father's policy claiming that she was a resident of her father's household and thus an insured pursuant to the policy. Progressive denied the claim and sued Mercer in the Circuit Court of Tippah County seeking a declaratory judgment of no coverage.

¶2. Following a hearing the circuit court granted summary judgment for Progressive stating:

> THIS CAUSE came before this Court on Petitioner Progressive Gulf Insurance Company's Motion for Summary Judgment and the Court, viewing the facts in a light most favorable to the non-moving party, and considering all arguments of counsel, both in the briefs and in oral argument for Summary Judgment, finds that said motion is well taken, as no genuine issue of material facts exists.
>
> Gloria Mercer is not entitled to any benefits under the subject policy for any injuries and damages she may have suffered in a motor vehicle accident that occurred on November 14, 2001, and there is not a sufficient nexus between her residence and her father's residence as to treat them as parts of a common household.

Following this ruling, Mercer appealed to this Court.

## STATEMENT OF THE FACTS

¶3. Mercer admitted all the allegations set forth in Progressive's complaint for declaratory judgment with the one exception of Paragraph 8 which alleged that she was "not entitled to recover any benefits under the subject policy because she was not a resident of the household of Jones, the named insured, and did not otherwise meet any definition of an insured under the policy." Mercer similarly admitted the allegations in Progressive's motion for summary judgment again with the exception that she denied that she was not entitled to recover

2

benefits because she was not a resident of the household of the insured (her father) at the time of the accident.

¶4.    On the date of the accident, November 14, 2001, Mercer, age 28, was living at 360 County Road 203 with her two children. Since the accident, Mercer moved to a different house less than a mile away from her parents. Mercer's father owned the house where she and the children lived on November 14, 2001. John Paul Jones is Mercer's father, and he lives at 330A County Road 203. The house that Mercer lived in on the date of the accident had previously been occupied by her grandmother. Mercer stated in her deposition, response to complaint for declaratory judgment and response to Progressive's motion for summary judgment that the house that she lived in on the date of the accident and her father's home had separate mailboxes. Both houses were served by separate utility meters. In her two responses, Mercer admitted that there was a distance of over 100 yards between her residence and her father's residence. While Mercer could not recall exactly, she believed that the electricity bill for her house was in her father's name, the water bill was in either her name or her father's name, and the cable bill was in her name. Both Mercer and her father paid the bills. The cable services were separate for each house. The home insurance was in Jones's name, and he paid the insurance bill for the house. Mercer did not pay her father any rent while she lived in the house. The two houses have separate driveways. In addition, Mercer and her children kept clothing, personal items and toys at the 360 County Road 203 house. In this house were a stove and microwave, refrigerator, freezer and food. Mercer cooked meals at this house approximately 3-4 times a week. Mercer and the children went to her father's home everyday to visit, eat and sometimes they stayed the night at his house. They

3

would walk or drive to her father's house. Mercer used the 360 County Road address to fill out information sheets for her children for school. She also received mail at a separate mail box. After the accident Mercer moved back to her parents' home until about February, 2002.

¶5. On the date of the accident, Mercer owned her own vehicle which was insured in her name by Farm Bureau. Mercer had settled her claim with Farm Bureau by the date of the deposition.

¶6. Jones's automobile insurance policy with Progressive stated in part:

INSURING AGREEMENT - UNINSURED MOTORIST BODILY INJURY COVERAGE

Subject to the Limits of Liability, if you pay a premium for Unisured/Underinsured Motorist Coverage, we will pay for damages, other that punitive ore exemplary damages, which an insured person is entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury:

1. sustained by and insured person;
2. caused by accident; and
3. arising out of the ownership, maintenance, or use of an uninsured motor vehicle.

\* \* \* \*

ADDITIONAL DEFINITIONS

When used in this Part III:

1. "Insured person" and "insured persons" mean:
a. you or a relative;
b. any person occupying a covered vehicle; and
c. any person who is entitled to recover damages covered by this Part III because of bodily injury sustained by a person described in a or b above.

GENERAL DEFINITIONS

12. "Relative" means a person residing in the same household as you, and related to you by blood, marriage, or adoption, including a ward,

4

stepchild, or foster child. Unmarried dependant children temporarily away from home will be considered residents if:

    a.      they are under the age of twenty-five (25) years; and

    b.      they intend to continue to reside in your household.

****

16.    "You" and "Your" mean the persons shown as the named insured on the Declarations Page, and that person's spouse if residing in the same household.

The policy listed Jones as the insured and he and his wife Ruby were the listed drivers of their two vehicles. Mercer's 1992 Oldsmobile was not a listed vehicle on her father's automobile insurance policy.

¶7.    This Court finds that the trial court did not err by granting summary judgment in favor of Progressive finding that Mercer was not a member of her father's household. The trial court was correct in finding that there was no genuine issue as to any material fact and that Progressive, therefore, was entitled to a judgment as a matter of law.

## DISCUSSION

**Whether the trial court erred in granting a summary judgment to an uninsured motorist insurance carrier.**

¶8.    Mercer argues that the trial court erred in granting summary judgment because there is a question of material fact to be determined by the jury, that being whether she was a member of her father's household at the time of her accident.

¶9.    This Court applies a de novo standard of review on appeal from a grant of summary judgment by the trial court. *Russell v. Orr*, 700 So.2d 619, 622 (Miss. 1997); *Richmond v. Benchmark Constr. Corp.*, 692 So.2d 60, 61 (Miss. 1997); *Merrimack Mut. Fire Ins. Co., v. McDill*, 674 So.2d 4, 7 (Miss. 1996); *Northern Elec. Co. v. Phillips*, 660 So.2d 1278,

5

1281 (Miss. 1995). Rule 56(c) of the Mississippi Rules of Civil Procedure provides that summary judgment shall be granted by a court if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that *there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law*. M.R.C.P. 56(c) (emphasis added). The moving party has the burden of demonstrating that there is no genuine issue of material fact in existence, while the non-moving party should be given the benefit of every reasonable doubt. ***Tucker v. Hinds County***, 558 So.2d 869, 872 (Miss. 1990). "Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says the opposite." ***Id***.

¶10. Of importance here is the language of the rule authorizing summary judgment "where there is no genuine issue of *material* fact."

> The presence of fact issues in the record does not per se entitle a party to avoid summary judgment. The court must be convinced that the factual issue is a material one, one that matters in an outcome determinative sense...the existence of a hundred contested issues of fact will not thwart summary judgment where there is no genuine dispute regarding the material issues of fact.

***Simmons v. Thompson Mach. of Miss., Inc.***, 631 So.2d 798, 801 (Miss. 1994) (citing ***Shaw v. Burchfield***, 481 So.2d 247, 252 (Miss. 1985)). The evidence must be viewed in the light most favorable to the non-moving party. *See* ***Russell***, 700 So.2d at 622; ***Richmond***, 692 So.2d at 61; ***Merrimack Mut. Fire Ins. Co.***, 674 So.2d at 7; ***Northern Electric Co.***, 660 So.2d at 1281; ***Simmons,*** 631 So.2d at 802; ***Tucker***, 558 So.2d at 872.

6

¶11. To avoid summary judgment, the non-moving party must establish a genuine issue of material fact within the means allowable under the Rule. *Richmond*, 692 So.2d at 61 (citing *Lyle v. Mladinich,* 584 So.2d 397, 398 (Miss. 1991)). "If any triable issues of fact exist, the lower court's decision to grant summary judgment will be reversed. Otherwise the decision is affirmed." *Richmond*, 692 So.2d at 61.

¶12. In *Merrimack Mut. Fire Ins. v. McDill*, 674 So.2d 4 (Miss. 1996), this Court determined whether Brown, a 28-year-old adult, was a member of a household for homeowner insurance purposes. Brown shot and wounded McDill, his former girlfriend, and shot and killed her fiancé. *Id*. at 6. Thereafter, McDill filed suit against Brown. *Id*. At the time of the shootings, Brown was living in a garage apartment located in a separate building on his parents' property. *Id*. at 8. The parents had a homeowners insurance policy with Merrimack. *Id*. at 6. Brown's parents notified Merrimack of the suit but Merrimack claimed that it had no obligation to defend Brown because he was not an insured under the policy. *Id*.

¶13. Prior to litigation, Brown and McDill entered into an agreed judgment in the amount of $100,000. *Merrimack*, 674 So.2d at 6. Thereafter, McDill obtained a writ of garnishment against Merrimack. *Id*. Merrimack claimed that Brown was not insured under the policy. *Id*. The trial court initially granted partial summary judgment determining that Brown was insured under the policy. *Id*. at 7.

¶14. This Court in *Merrimack* held that "[t]he key in determining the intent of the parties is whether they created and maintained a household, and not the existence of a contiguous roof." *Id*. at 8. *Merrimack* is distinguishable because Brown received his mail at his parents'

7

address, ate numerous meals in his parents' home, and his parents imposed specific guidelines to living in the apartment. *Id*. at 8.

¶15.    This Court ultimately reversed and remanded for a jury trial on the issue of Brown's "household resident" status. *Id*. at 10.  In reaching this decision, this Court determined that there were material facts in dispute and, therefore, the lower court erred in granting summary judgment. *Id*.

¶16.    In *Wright v. Allstate Indem. Co.*, 618 So.2d 1296, 1300 (Miss. 1993), this Court reversed a grant of summary judgment in favor of the insurer, Allstate.  James Wright and his wife bought a home insurance policy for a house that was occupied by their son.  *Id*. at 1297.  The son alleged that occupants of a passing car shot at him, but when he returned fire the bullet killed a sleeping neighbor.  *Id*. at 1297.  The wrongful death beneficiaries filed suit against the son and Allstate filed a complaint for declaratory judgment claiming that the son was not a member of the household.  *Id*.  This Court held that a question of material fact existed in regard to the insurance coverage.  *Id*. at 1300.  The fact at issue was whether James Wright told the insurance agent *who* would actually live in the house that was covered in the homeowner's insurance policy.  *Id.*

¶17.    In *Johnson v. Preferred Risk Auto. Ins. Co.*, 659 So.2d 866, 867 (Miss. 1995), a couple left their home in Tennessee and temporarily moved in with their respective parents until such time as they could move to Arkansas to begin a new job.  The married couple were in an automobile accident, and both sets of parents had automobile insurance policies with Preferred Risk.  *Id*.  This Court determined that the married couple, injured in the automobile accident, were considered "residents" under the uninsured motorists insurance policies.  *Id.*

8

at 875. This Court determined that the sole question was whether the couple were defined as "residents" within the meaning of the insureds' policies. *Id*. at 870. This Court found that this issue was a question of law because there were no undisputed facts and *no* question of fact such as how long the couple stayed at their parents' homes or if they planned to stay at the homes indefinitely. *Id*.

¶18. Mercer argues that her case is similar to *Merrimack*. She argues that the son in *Merrimack* lived in a garage apartment, a separate structure on the parents property and not under a contiguous roofline, was employed and self supporting, whereas Mercer also lives in a separate structure on her father's property and she is dependant on her father for support. In addition, Mercer argues that the intent of the parties and not the physical location of an individual determines who is considered a member of a household. *Merrimack*, 674 So.2d at 8. Further, Mercer claims that the term "household" is not defined in the policy of the uninsured motorist statute and that insurance policies are to be construed against the insurer and in favor of a policyholder. *Mut. Ben. Health & Acc. Ass'n v. Blaylock*, 163 Miss. 567, 573, 143 So. 406 (1932). *See also* *J&W Foods Corp. v. State Farm Mut. Auto. Ins. Co.*, 723 So.2d 550, 552 (Miss. 1998).

¶19. Progressive argues that Mercer never contended that she intended to live with her father. In addition, Progressive contends that *Merrimack* does not support Mercer's position. Progressive claims that the circumstances in Mercer's case were more tenuous than those in *Merrimack*. We agree.

¶20. Progressive also cites to a Florida case which, while not controlling on this Court, is nevertheless instructive. In *American Sec. Ins Co. v. Van Hoose*, 416 So.2d 1273 (Fla. Dist.

9

Ct. App. 1982), a Florida court appellate reversed and remanded a lower court ruling. The court held that a mother and her daughters were not "residents of household" because there was no intent that the father and the daughter and granddaughters intended to live together. *Id*. at 1275. The daughter and her children lived in a house across the street from the father; received support from the father such as rent, utilities and food; on occasion they all ate and slept at the father's home; the father frequently drove the daughter to work; and the daughter used her home address for job applications and tax purposes. *Id*. at 1274.

¶21.	We find that the trial court correctly granted the summary judgment motion in favor of Progressive. Mercer does not dispute that she and her children lived in a house that was approximately 100 yards from her father's residence. In addition, each house had a separate address, mailbox, driveway, utility meters and cable services. Mercer and her children kept clothing, personal items and toys at the 360 County Road 203 residence. This residence also had its own stove, microwave, refrigerator, freezer and food. Mercer cooked a number of meals at this home each week. Further, Mercer used the 360 County Road 203 residence to fill out information sheets for her children's school. Mercer also received mail in her separate mailbox. On the other hand, Mercer's father assisted in paying some bills for her, and it is unclear as to which bills, but it appears that both Mercer and her father had different bills in each of their names. None of this information is in dispute.

¶22.	As this Court in *Merrimack* held "[t]he key in determining the intent of the parties is whether they created and maintained a household, and not the existence of a contiguous roof." *Merrimack*, 674 So.2d at 8. We find that Mercer did not intend to live with her father, instead all the facts, which are not in dispute, demonstrate that Mercer maintained a separate

10

household.  Mercer lived in a separate structure, approximately 100 yards away from her father, with a separate address, mailbox, utilities and cable.  The house had all the necessities such as a stove, refrigerator, microwave, food, clothing and toys.  While Mercer went to her father's home daily and ate some meals and occasionally slept at his house, she nevertheless cooked meals in her house 3-4 days a week.

¶23.    Mercer's case is distinguishable from *Merrimack*.  In *Merrimack,* the son lived in a garage apartment, ate many of his meals at his parents house, received his mail at his parents house, had specific guidelines to follow while living in the garage and the father wanted to move his office from the garage to the house to alleviate stress on his back.  Here, Mercer lived in a house that in the very least had a separate address, mailbox, utility meters and cable service.  She either drove or walked over 100 yards to her father's home, but she had lived in this structure for approximately two months prior to her accident.  Indeed, this Court finds that the facts in Mercer's case are more similar to the  facts in *Van Hoose*, 416 So.2d 1273.  Further, this Court in *Merrimack* reversed and remanded for a jury trial on this issue of Brown's household resident status.  Despite the ruling in  *Merrimack,* this Court also held in *Johnson* that where there exists no genuine issues of material fact as to whether a person is considered  a "resident" pursuant to an insurance policy, summary judgment is proper. *Johnson*, 659 So.2d at 870.

¶24.    This Court finds that there were no material facts in dispute; therefore the trial court did not err in granting the motion for summary judgment in favor of Progressive.

**CONCLUSION**

11

¶25.　There were no issues of material fact in dispute.　The trial court did not err by granting the motion for summary judgment in favor of Progressive.　Accordingly, the judgment of the Circuit Court of Tippah County is affirmed.

¶26.　**AFFIRMED.**

　　**SMITH, C.J., WALLER AND COBB, P.JJ., CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ, J., NOT PARTICIPATING.**