IRVING, P.J.,
for the Court:
¶ 1. Aggrieved from the denial of coverage and benefits by their insurance carrier, Allstate Insurance Company (Allstate), Wayne and Sandy Marisco appeal the grant of a motion for summary judgment in favor of Allstate by the Pearl River County Circuit Court. The Mariscos argue that the circuit court erred by: (1) supplementing the appellate record with *1171 evidence not presented to the trial court, (2) denying the Mariscos’ objection to evidence, (3) allowing Allstate to supplement its motion for summary judgment, (4) granting Allstate’s motion for summary judgment, (5) denying the Mariscos’ motion for summary judgment as to “Allstate’s Liability for Coverage on the Insured Dwelling,” and (6) conducting an ex parte investigation into the facts of the case. We affirm in part and reverse and remand in part for further proceedings.
FACTS
¶2. On October 24, 2010, the Marisco family returned to their home in Poplar-ville, Mississippi, following a weekend vacation in Church Hill, Mississippi, to find that their home had been burglarized and vandalized. The vandals broke the plumbing, causing the entire house to flood. The Mariscos notified the authorities and filed a claim with Allstate the same day.
¶ 3. Since the house was uninhabitable, the Mariscos rented a trader where Wayne planned to stay, with his son, as they rebuilt the house. The rest of the family would stay at Sandy’s mother’s house. When Wayne realized the insurance process would take longer than anticipated, he approached Ryan Richard (Ryan), a friend, to lease Ryan’s house at 100 Bill Dyess Road, McNeill, Mississippi, for three months at a cost of $7,040. Allstate agreed to pay the rental cost under the Additional Living Expenses (ALE) portion of the Mariscos’ policy and issued an ALE check for $7,040, made payable to the Mar-iscos and Ryan. Prior to the Mariscos moving in, a disagreement arose between Ryan and the Mariscos about the terms of the lease, namely that Ryan would remain in the house. Subsequently, the lease was abandoned. Wayne returned to the trailer, and eventually joined his family at his mother-in-law’s house. Following the collapse of the lease agreement, Wayne agreed to pay Ryan half the amount of the ALE check for improvements made to the house in the anticipation of the rental agreement.
¶4. Allstate, suspicious of foul play, investigated the Mariscos to determine whether the Mariscos were entitled to a payout based on their all-risks policy. According to Allstate, during its investigation, there were numerous discrepancies in the information provided by the Mariscos. Allstate conducted two Examinations Under Oath (EUO) of Wayne and one of Sandy. On February 16, 2011, during Wayne’s first EUO, Allstate informed Wayne that his insurance policy required him to produce any witnesses that Allstate deemed material and requested that Wayne produce Ryan for an EUO. Wayne responded, “Okay.” When Wayne was asked during the second EUO, on June 13, 2011, if he had communicated with Ryan after his initial EUO, Wayne stated that he had talked to Ryan and told him that Allstate wanted to interview him, but Ryan had declined. During the second EUO, Wayne identified disturbances and suspicious activity leading up to the reported vandalism incident. When asked if he knew anyone that could be a suspect, Wayne stated that several people were “pointing to a certain boy” named Jonathan Sones.
¶ 5. On August 24, 2011, the Mariscos brought suit against Allstate for (1) the full costs of repairs to the insured dwelling; (2) the full costs of replacing personal property; (3) compensatory damages for emotional distress and Allstate’s invasion of the Mariscos’ privacy; (4) consequential damages incurred by the Mariscos including, but not limited to, the loss in value of their home and property; (5) attorney’s fees, litigation expenses, and interest; and (6) punitive damages for bad-faith breach *1172 of the insurance contract and other tor-tious conduct. In their lawsuit against Allstate, the Mariscos included several additional parties, including Otis Stanley-Graham (Graham). They alleged that Graham participated in the vandalism of their home. Graham denied the allegation and, ultimately, was dismissed from the lawsuit.
¶ 6. At the time the lawsuit was filed, Allstate had not concluded its investigation. On September 4, 2011, in a letter to the Mariscos, Allstate denied the claim, basing their denial on the findings of their investigation and the policy language, which state: “We do not cover any loss or occurrence in which the insured person has concealed or misrepresented any material fact or circumstance.” The letter specifically stated:
[0]ur investigation has revealed that Wayne Marisco had the opportunity to cause and/or direct the cause of this loss based upon forensic analysis of cellular tower and sector records for cellular devices belonging to Wayne and Sandy Marisco. Based upon this forensic analysis, Allstate has determined that Wayne and Sandy Marisco made material misrepresentations regarding the whereabouts of Wayne Marisco on October 23, 2010[,] and how the reported loss occurred.
Additional material representations made during Allstate’s investigation of this loss include your financial condition at the time of the loss, including but not limited to business and personal debts, the amount, age, valuation and/or location of personal property claimed as stolen and/or damaged, requests for reimbursement of expenses, including but not limited to your request for rental expenses for a camper Wayne Marisco testified was delivered to your home on October 25, 2010, and rental expenses for 100 Bill Dyess Road, McNeill, Mississippi, for which you submitted a signed Lease Agreement and negotiated advance lease payments from Allstate for a home in which you admit you never lived.
We have also determined that you failed to produce documents material to Allstate’s investigation of your claim regarding your financial condition and Wayne Marisco’s businesses. Wayne Marisco further failed to produce Ryan Richard for an examination under oath despite Mr. Marisco’s agreement to do so.
* * *
It is possible that other facts and bases exists upon which Allstate could rely in denying your claim, but which are unknown and/or Allstate has been prevented from discovering as a result of the misrepresentations and concealments made by Wayne and Sandy Marisco.
¶ 7. On June 29, 2012, the Mariscos filed a motion for summary judgment, arguing that there was no genuine issue of material fact with respect to their having suffered a covered accidental loss. Allstate filed its motion for summary judgment on July 2, 2012, asking the court to dismiss the Mariscos’ claims with prejudice because the Mariscos could not meet their burden of proof to establish a loss within the policy coverage. Specifically, Allstate contended that there was no genuine issue of material fact with respect to the Maris-cos having concealed facts and having made material misrepresentations that would void coverage under the policy. In the alternative, Allstate requested a partial summary judgment as to the Mariscos’ extracontractual-damages claim, asserting that it had an arguable reason to deny the Mariscos’ claim. The Mariscos responded to Allstate’s motion for summary judgment, arguing that there was no evidence *1173 that the Mariscos concealed facts or made misrepresentations during Allstate’s investigation. Allstate supplemented its motion for summary judgment with additional evidence to support its accusations of misrepresentation and concealment. Allstate also filed a response to the Mariscos’ motion for summary judgment, stating that the mere fact that the Mariscos claimed that the loss was accidental did not in and of itself establish that the loss was an accidental loss. The Mariscos filed a response to Allstate’s supplementation of its motion for summary judgment, stating that there was no rule that allowed a movant to continuously supplement its motion with new evidence and new claims. The Mariscos also argued that several exhibits within Allstate’s supplementation were inadmissible.
¶ 8. On August 8, 2012, after a hearing on the motions for summary judgment, the circuit court denied all objections submitted by the Mariscos, denied the Mariscos’ motion for summary judgment and their claim for extracontractual damages, and granted Allstate’s motion for summary judgment. The court found that Allstate was entitled to summary judgment because of three specific material breaches of the policy. On September 17, 2012, the Mariscos filed the instant appeal.
¶ 9. Additional facts, as necessary, will be related in the analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES
¶ 10. Appellate courts review a circuit court’s grant of summary judgment de novo. Stringer v. Trapp, 30 So.3d 339, 341 (¶ 9) (Miss.2010). Summary judgment is appropriate where “the pleadings, depositions, answers to interrogatoriesf,] and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” M.R.C.P. 56(e). “The burden is upon the moving party, and the evidence should be viewed in the light most favorable to the nonmoving party.” Stringer, 30 So.3d at 341 (¶ 9). “Summary judgment is inappropriate where there are undisputed facts which are susceptible to more than one interpretation.” Canizaro v. Mobile Comms. Corp. of Am., 655 So.2d 25, 28 (Miss.1995). If the undisputed facts can support more than one interpretation, then this Court “will not hesitate to reverse and remand for a trial on the merits.” Id. at 28-29.

I. Allstate’s Motion for Summary Judgment

¶ 11. “All-[r]isk policies provide coverage for all risks unless the specific risk is excluded.” Coastal Hardware & Rental Co. v. Certain Underwriters at Lloyds, London, 120 So.3d 1017, 1024 (¶ 29) (Miss.Ct.App.2013) (citation and internal quotation marks omitted). “But with all-risk coverage, while the insured still has the basic burden of proving his right to recover, the insurer bears the burden of proving that a particular peril falls within a policy exclusion.” Id. (citation and internal quotation marks omitted). The Supreme Court of Mississippi has ruled that where a policy requires production of documents in support of a claim, a refusal by the insured to produce for examination written documents that are pertinent and material to the insurance and loss is a bar to recovery under the policy. S. Guar. Ins. Co. v. Dean, 252 Miss. 69, 76, 172 So.2d 553, 556 (1965). “In an examination of the insured, all of those matters are material which have a bearing on the insurance and the loss. The insured is required to give the best information obtainable.” Id. The Mariscos contend that All *1174 state did not meet its burden of proof, as it did not show that the Mariscos made willful, material misrepresentations, or willfully concealed material information from Allstate. Consequently, the Mariscos allege the circuit court erred by granting summary judgment in favor of Allstate. Allstate’s concealment or fraud clause in its policy provides: “This policy is void if it was obtained by misrepresentation, fraud, or concealment of material facts.... We do not cover any loss or occurrence in which any insured person has concealed or misrepresented any material fact or circumstance.”
¶ 12. Here, the Mariscos’ insurance policy is an all-risk policy. The policy lists specific risks that are excluded. Therefore, Allstate had the burden of proving that there was no genuine issue of material fact as to whether the Mariscos’ loss was excluded from coverage because the Mariscos had engaged in conduct amounting to a material breach of one of the policy provisions. Allstate claims that the Mariscos misrepresented and concealed facts concerning their whereabouts on the day prior to the loss, the condition of their finances at the time of the loss, the lease agreement with Ryan, and the identity of alleged suspects. Also, Allstate claimed that there were discrepancies between the list of stolen items given to the police and the list given to Allstate.
¶ 13. The trial court specifically found that the Mariscos committed three material breaches of the policy contract: (1) the Mariscos’ misrepresentation with respect to the lease with Ryan; (2) the Mariscos’ failure to timely disclose their suspicion of Otis Stanley Graham; and, (3) the Maris-cos’ failure to disclose the existence of a video recording of Ryan. We address each of these in turn.

(а) The Lease Agreement

¶ 14. As stated, the trial court found that the lease agreement between Ryan and Wayne constituted a material breach. However, the trial court did not explain how the Mariscos’ entering into a contract with Ryan for temporary housing constituted a material breach of the policy provisions. The Mariscos’ policy covered temporary housing in the event of a loss of the dwelling and did not prescribe how the temporary housing had to be obtained. Wayne testified in his deposition that prior to signing the lease agreement with Ryan, he spoke with Hank Kuylen, an Allstate adjuster, who advised him that Allstate would pay the rental fee for temporary housing for the Mariscos, provided they produced a signed lease. The Mariscos then obtained and tendered a signed lease agreement to Allstate prior to Allstate’s sending the rental payment. Wayne explained in his deposition that he did not go forward with the lease because Ryan refused to vacate the premises as required by the lease.[1] Wayne also stated that he spoke with Wilbur Jordan, an Allstate investigator, and explained that the lease fell through and why.
¶ 15. We find that there is a genuine issue of material fact as to whether the Mariscos engaged in fraud or misrepresentation with respect to the lease agreement. While it is obvious that the trial court accepted Allstate’s position that the Maris-cos never intended to live at the leased premises and that the lease agreement was a pretext to obtain money for some unspecified purpose not allowed by the policy, the fact remains that the Mariscos *1175 presented a plausible explanation for why they never lived in Ryan’s house, as contemplated by the lease agreement. To the extent that the trial court also accepted Allstate’s contention that the Mariscos committed a material breach because they did not use the ALE check for the purpose intended, we note that Allstate did not bring to the trial court’s attention, and has not pointed out in its brief any provision of the policy that places any restriction on the use of ALE funds. It is not the role of a trial judge upon consideration of a motion for summary judgment to make a determination of issues of fact. That is the role of a jury pursuant to a trial on the merits. Therefore, we find that the trial court erred in finding that the Mariscos breached the policy contract with respect to their submission of the rental contract and obtainment of ALE funds.

(b) Suspicion of Graham

¶ 16. Allstate makes much of the fact that Wayne should have reported his suspicion of Graham to Allstate when he became aware that Graham may have been responsible for the vandalism. Allstate focuses on what Wayne stated during his February 2012 deposition — that he knew about Graham “last summer” and reported it to the police. More specifically, Allstate hinges its material-breach claim on Wayne’s failure to mention Graham during either of the EUOs given by Wayne during the summer of 2011. In his deposition, Wayne specifically explained that he found out about Graham after Wayne’s second EUO.[2] We also note that Wayne did not have firsthand knowledge that Graham was involved; instead, he found out from Scott Sones. Finally, we note that the original complaint filed by the Mariscos, which specifically named Graham as a defendant, occurred prior to Allstate’s finishing its investigation. At the very least, Allstate was put on notice that Graham may be a suspect, and Allstate had an opportunity to investigate Graham prior to the close of its investigation. Allstate’s letter, dated September 4, 2011, makes no mention of Graham. Whether the Maris-cos materially breached the policy by wil-fully failing to timely report to Allstate about Graham is a genuine issue of material fact for a jury to decide. Therefore, we find that the trial court erred by finding that the Mariscos materially breached the policy contract by failing to timely disclose Graham’s name to Allstate.

(c) Video of Ryan Richard

¶ 17. Allstate contends that the Mariscos had a duty to produce Ryan or, in the alternative, to notify Allstate that there was a video of Ryan taken by Scott Favre, a public adjuster, for the purposes of this litigation.' The video that Allstate refers to was disclosed to all parties to the litigation during the discovery process in December 2011. The record does not establish that the Mariscos knew that the video existed or, if they did, when they learned about it. Even if the Mariscos did not timely present this evidence to Allstate, we cannot see how this is a “material” breach. Nothing in the record reflects that if Allstate had been given this piece of “evidence” that the result of their investigation would have differed. In addition, during the second EUO, Wayne attested that he told Ryan that Allstate wanted to talk to him. There is no evidence in the record that Wayne had the power to force Ryan to participate in an EUO with Allstate. On these facts, we find that a genu *1176 ine issue exists as to whether Wayne’s effort to produce Ryan constituted a failure to comply with his obligation under the policy — to “produce representatives, employers, members of the insured’s household or others to the extent it is within the insured person’s power to do so” (Emphasis added).

(d) Wayne’s Involvement

¶ 18. Although not addressed by the trial court, we find it appropriate to discuss the most serious implication from Allstate’s perspective — whether Wayne was involved in the vandalism and theft that resulted in the loss of his house and personal property. Allstate, in its denial letter, asserts that the Mariscos “had the opportunity to cause and/or direct the cause of this loss based upon forensic analysis of cellular tower and sector records for cellular devices belonging to Wayne and Sandy Marisco.” Allstate supports its conclusion based on circumstantial evidence, specifically that the cell phone towers in use during the days leading up to the incident were not in Church Hill, Mississippi, where the Mariscos said they had vacationed.[3] However, Allstate’s investigator, Fred Emilio, stated in his deposition that after nearly two years of watching the Mariscos, he could not cite specific facts that would support a finding that the Mar-iscos vandalized their own home. Eyewitnesses testified in their deposition that the only person seen at the Mariscos’ residence, near the time it was vandalized, was Ryan. While Allstate may make the leap that Ryan and the Mariscos conspired, it remains a genuine issue of fact, as there is nothing in the record to establish this as an undisputed fact.[4]

II. The Mariscos’ Motion for Summary Judgment

¶ 19. The Mariscos argue that the circuit court erred in denying their motion for summary judgment, as they had met their burden of proof. In Johnson v. Preferred Risk Automobile Ins. Co., 659 So.2d 866, 870 (Miss.1995), the supreme court explained:
Under M.R.C.P. 56, a court, may grant summary judgment “if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” Short v. Columbus Rubber & Gasket Co., Inc., 535 So.2d 61, 63-64 (Miss.1988). In the context of insurance cases, summary judgment is improper where there exists a material question of fact with regard to coverage. Wright v. Allstate Indem. Co., 618 So.2d 1296, 1300 (Miss.1993). In Wright, this Court reversed a grant of summary judgment to an insurance company, holding that questions of fact existed, precluding such judgment. The disputed issues of fact concerned whether or not Wright had told Allstate who would- be living in the home for which Wright had purchased insurance. Wright swore he had told the Allstate agent that certain persons would be liv *1177 ing in the house; the agent swore Wright had not told him. The Court found this to be “a classic case requiring a jury determination of disputed issues of fact.”
The Mariscos claim that there are no genuine issues of material fact as to whether they materially breached the policy contract and, therefore, they were entitled to summary judgment, finding that Allstate was obligated to pay their claim without further delay. We disagree. We find the instant case to be analogous to Wright, as discussed in Johnson. Therefore, the circuit court did not err in denying the Mar-iscos’ motion for summary judgment. This issue is without merit.

III. Extracontractual Damages

¶ 20. The Mariscos claim that Allstate failed to produce evidence of any legitimate or arguable reason for its denial of their claim, and, therefore, they are entitled to extra-contractual or punitive damages. Since we are reversing and remanding for further proceedings, it would be premature for us to address whether punitive damages are appropriate. That will be a decision to be made by the trial court should the Mariscos prevail on remand. All we hold here is that genuine issues of material fact exist with respect to whether the Mariscos materially breached the policy contract, thereby precluding summary judgment in favor of Allstate.
¶ 21. We have considered the Mariscos’ issues regarding (1) supplementation of the trial and appellate records, (2) objections to evidence submitted by Allstate in support of its motion for summary judgment, and (3) ex parte communications by the trial judge, and find that, in light of our ruling, they are either moot or do not warrant addressing. Therefore, we decline to do so.
¶ 22. THE JUDGMENT OF THE PEARL RIVER COUNTY CIRCUIT COURT IS AFFIRMED IN PART, AND REVERSED AND REMANDED IN PART FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
LEE, C.J., BARNES, ISHEE, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR. GRIFFIS, P.J., AND ROBERTS, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.

. The lease provided that the leased premises would be used exclusively by Wayne and his four dependents,

. Interestingly, as noted earlier, during Wayne's second EUO, he did mention that Jonathan Sones’s name had been given to him as a person that may have had some involvement in the vandalism of Wayne’s home.

. Kevin R. Levy, an expert in historical cellular reconstruction, testified in his deposition that, based on his analysis of cell phone tower records, Wayne’s cell phone was operating off of one or more network connections in or around the vicinity of the Mariscos’ residence around noon on Saturday, October 23, 2010, the weekend that the incident occurred. Levy’s preliminary report indicated that the data showed that, for at least a period of time, Wayne had left the proximate location of the campgrounds that the Mariscos were visiting that weekend.

. Allstate does not state this in its report; however, it is clearly implied.