# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-CA-02080-SCT

*ROBERT McLEOD, JR.*

*v.*

*ALLSTATE INSURANCE COMPANY*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/09/1999 |
| TRIAL JUDGE: | HON. ROBERT G. EVANS |
| COURT FROM WHICH APPEALED: | COVINGTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | M. RONALD DOLEAC |
| ATTORNEYS FOR APPELLEE: | WILLIAM C. GRIFFIN |
| | J. WRILEY McKEOWN |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | REVERSED AND REMANDED - 06/28/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 7/19/2001 |

### EN BANC.

McRAE, PRESIDING JUSTICE, FOR THE COURT:

### STATEMENT OF THE CASE

¶1. Aggrieved from the denial of uninsured motorist benefits by his insurance carrier, Allstate Insurance Company (Allstate), Robert McLeod, Jr., ("McLeod"), brings this appeal raising the issue of whether his minor daughter was a resident of his household and charges that the trial court erred by granting summary judgment to Allstate. Finding that McLeod presented sufficient facts that his daughter, Matia, was a resident of his household and therefore, also an insured under his insurance policy, we reverse the judgment of the trial court and remand this case for a trial on the merits.

### I. Facts

¶2. Matia McLeod ("Matia"), the twenty-year-old daughter of Robert McLeod, Jr., ("McLeod"), was severely injured in an automobile accident on March 23, 1995, subsequently dying of her injuries on March 28, 1995. The accident was an alleged hit-and-run accident, and McLeod petitioned his insurance carrier, Allstate Insurance Company, ("Allstate"), for uninsured motorist benefits under his insurance policy claiming that Matia was also a resident at his household. Allstate denied that Matia was an "insured" as defined by the policy and refused these benefits. In response to McLeod's resulting lawsuit, Allstate filed a motion for summary judgment, and McLeod responded with a cross-motion for summary judgment. Allstate was granted summary judgment by the Circuit Court of Covington County on August 10, 1999. It is from this order and grant of summary judgment that McLeod now appeals.

¶3. Allstate denied that Matia was an "insured" as defined by its policy, stating that she was not a resident of her father's household as she had an apartment in Jackson, Mississippi. McLeod's home is in Collins,

Mississippi.

¶4. Matia had moved from her father's home at 315 Rebecca Road, Collins, Mississippi, to Jackson, Mississippi, in June of 1994 to attend college. However, Matia still maintained a room at her father's home and kept personal belongings such as clothing, photographs, and stuffed animals there. McLeod continued to provide financial support to Matia in the form of rent, tuition, and money for groceries and other expenses.

¶5. It is undisputed that Matia's Jackson address at the time of her death was 515/517 Mitchell Avenue, Jackson, Mississippi, 39216. From June 1994 to March 1995, she lived in a duplex with her boyfriend, Dextrous Lashou Barnett[1] ("Dextrous"). Matia enrolled in Holmes Junior College in the fall of 1994 and in September 1994, she withdrew from the college and listed her reason as, "moving out of town (to Collins)."

¶6. The trial court erred in granting summary judgment to Allstate. McLeod did present triable issues of fact to the trial court, which should have been submitted to a jury to decide on the merits. This matter is therefore reversed and remanded to the trial court for a jury trial to determine the merits.

## II. Standard of Review

¶7. This Court conducts a de novo review of awards of summary judgment by the trial courts. *Canizaro v. Mobile Comms. Corp. of Am.*, 655 So. 2d 25, 28 (Miss. 1995) (citing *Short v. Columbus Rubber & Gasket Co.,* 535 So. 2d 61, 63 (Miss. 1988)).

## III. Law

### WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO ALLSTATE.

¶8. The trial court erred in granting summary judgment to Allstate because there was evidence presented by McLeod that showed a dispute as to material facts. Summary judgment is inappropriate where there are undisputed facts which are susceptible to more than one interpretation. *Canizaro*, 655 So. 2d at 28. If the undisputed facts can support more than one interpretation, then this Court, "will not hesitate to reverse and remand for a trial on the merits." *Id.*

¶9. The terms of Allstate's insurance policy are subject to more than one interpretation, despite the inclusion of definitions in its policy. The Allstate Automobile Policy, page 15, "Part V, Uninsured Motorists Insurance, Coverage SS," defines an "insured person" as

1. **You** and any **resident** relative.

(emphasis in original).

This policy further defines a "resident" as,

a person who physically resides in **your** household with the intention of continuing residence there. **Your** unmarried dependent children while temporarily away from home will be considered residents if they intend to resume residing in **your** household.

(emphasis in original).

¶10. In addition, Mississippi has developed an Uninsured Motorist Act, Miss. Code Ann. §§ 83-11-101 through 83-11-111 (1991 & Supp. 2000). Miss. Code Ann.§83-11-101(1) states the following:

> No automobile liability insurance policy or contract shall be issued or delivered after January 1, 1967, unless it contains an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages for bodily injury or death from the owner or operator of an uninsured motor vehicle, within limits which shall be no less than those set forth in the Mississippi Motor Vehicle Safety Responsibility Law....

The Act also defines "insured" in Miss. Code Ann. § 83-11-103(b) as the following,

> The term "insured" shall mean the named insured and, while resident of the same household, the spouse of any such named insured and relatives of either, while in a motor vehicle or otherwise, and any person who uses, with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies, and a guest in such motor vehicle to which the policy applies, or the personal representative of any of the above. The definition of the term "insured" given in this section shall apply only to the uninsured motorist portion of the policy.

¶11. A similar case, *Aetna Cas. & Sur. Co. v. Williams*, 623 So. 2d 1005, 1006 (Miss. 1993), held that the decedent son, a nineteen-year-old unemancipated minor child of divorced parents, could be considered a "resident" of both parents' homes for purposes of the Uninsured Motorist Act. Under the insurance policy of the non-custodial parent, the estate of the decedent was allowed to receive the appropriate uninsured motorist benefits arising from his death. In addition, neither the car in which the decedent was a passenger nor the other vehicle involved were covered by liability insurance. The son's mailing address at the time of the accident was at the home of his custodial parent, his mother, but he kept personal belongings and maintained a bedroom at the homes of both parents. *Id.*

¶12. *Aetna* compared the policy provisions with the statutes of the Uninsured Motorist Act and stated that, "we consistently have held that the language of the Mississippi Uninsured Motorist Coverage Act 'must be construed liberally to provide coverage and strictly to avoid or preclude exceptions or exemptions from coverage.'" *Id.* at 1008-09 (citing *Harris v. Magee*, 573 So. 2d 646, 651 (Miss. 1990) (citing *Washington v. Georgia Am. Ins. Co.*, 540 So. 2d 22, 24 (Miss. 1989); *Wickline v. United States Fid. & Guar. Co.*, 530 So. 2d 708, 711 (Miss. 1988); *Stevens v. United States Fid. & Guar. Co.*, 345 So. 2d 1041, 1043 (Miss. 1977); *accord Cossitt v. Federated Guar. Mut. Ins. Co.*, 541 So. 2d 436, 440 (Miss. 1989); *Parker v. Cotton Belt Ins. Co., Inc.*, 314 So. 2d 342, 344 (Miss. 1975)).

¶13. The analysis applied in *Aetna* is also applicable to the present case. In *Aetna*, we concluded that a broad reading of the term "resident" was appropriate and in keeping with the intent of the legislature, which in defining an "insured," chose the more inclusive term, "residence" as opposed to "domicile." *Id.* at 1009. A person may have only one domicile at a time. However, we have held that a person may have multiple residences simultaneously. *Id.* (citing *In re Estate of Burshiem*, 483 N.W.2d 175, 180 (N.D. 1992); *In re Marriage of Tucker*, 277 Cal. Rptr. 403, 408 (Cal. Ct. App. 1991); *Laufer v. Hauge*, 528 N.Y.S.2d 878, 879 (N.Y. App. Div. 1988); *Mutual Ins. Cas. Ins. Co. v. Olson*, 402 N.W.2d 621, 624 (Minn. Ct. App. 1987); *Davis ex rel. Davis v. Maryland Cas. Co.*, 331 S.E. 2d 744, 746 (N.C. Ct. App. 1985); *Gowins v. Gowins*, 466 So. 2d 32, 35 (La. 1985)).

¶14. Once established, a person's domicile remains intact "absent a clear indication of intent to abandon the

existing domicile and to establish another." ***Aetna***, 623 So. 2d at 1009 (citing ***Mississippi Band of Choctaw Indians v. Holyfield***, 490 U.S. 30, 48, 109 S.Ct. 1597, 1608, 104 L.Ed.2d 29, 46 (1989) (person can reside at one place but be domiciled at another) (citations omitted)). However, residency is a more flexible concept, and permanency is not a requirement for residency. Even a temporary and transient place of dwelling can qualify. ***Id.*** at 1010 (citing ***Huffman v. Huffman***, 232 Neb. 742, 749, 441 N.W.2d 899, 904-05 (1989); ***In re Brown***, 132 Misc.2d 811, 815, 505 N.Y.S.2d 334, 338 (N.Y. Sur. 1986)). In addition, we have held that a minor is "legally unable" to establish a residence separate and apart from their parents. ***Aetna***, 623 So. 2d at 1011-12.

¶15. We have further held in ***Johnson v. Preferred Risk Auto. Ins. Co.***, 659 So. 2d 866, 868-69 (Miss. 1995), that a married couple *temporarily* residing with their respective parents prior to their moving to a new home, were eligible to recover uninsured motorists benefits under insurance policies issued to their parents. Ronald and Sara Johnson were injured in an accident with an uninsured motorist, while each spouse was temporarily living with their respective parents to attend to personal affairs prior to moving to their new home together. Even in this case, temporary residence was sufficient to establish a claim for uninsured motorist benefits under the policy of a parent.

¶16. Where the language of an otherwise enforceable contract is subject to more than one fair reading, the reading applied will be the one most favorable to the non-drafting party. ***Leach v. Tingle***, 586 So. 2d 799, 801-02 (Miss. 1991) (citing ***Stampley v. Gilbert***, 332 So. 2d 61, 63 (Miss. 1976)). Specifically, as to insurance contracts, where there is doubt as to the meaning of the contract, it will be "universally construed most strongly against the insurer, and in favor of the insured and a finding of coverage." ***Universal Underwriters Ins. Co. v. Ford***, 734 So. 2d 173, 176-77 (Miss. 1999). *See also* ***Nationwide Mut. Ins. Co. v. Garriga***, 636 So. 2d 658, 662 (Miss. 1994); ***American Hardware Mut. Ins. Co. v. Union Gas Co.***, 238 Miss. 289, 294-95, 118 So. 2d 334, 336 (1960); ***Griffin v. Maryland Cas. Co.***, 213 Miss. 624, 632, 57 So. 2d 486, 487 (1952); ***Mutual Ben. Health & Acc. Ass'n v. Blaylock***, 163 Miss. 567, 573, 143 So. 406, 407 (1932) ( "It is a familiar rule of construction of contracts, and especially insurance contracts, that they are construed most strongly against the party drafting the contract, and most favorably to the policyholder.").

¶17. In this case, McLeod presented undisputed issues that were subject to more than one interpretation. For example, determining whether Matia was a resident in this case also involves resolving the question of her intent, because the policy definition of a resident states that children temporarily away from home are residents if they "intend to resume residing in your household." (emphasis added).

¶18. McLeod asserts in a sworn affidavit that it was Matia's intent to move back home to Collins, Mississippi, the weekend of March 25, 1995. However, Allstate counters that her intent was never manifested because at the time of her death on March 28, 1995, her address was in Jackson. Allstate also asserts that the affidavits of McLeod and of Matia's brother, Walter Robert McLeod ("Walter"), are hearsay and therefore inadmissible.

¶19. Allstate filed a motion to strike the affidavits along with their response to the McLeod's cross-motion for summary judgment. However, the motion to strike was never ruled upon by the trial court, and it appears that the trial judge considered the affidavits as evidence of intent when ruling upon the motions for summary judgment. The statements in the affidavits appear to prove Matia's intent and not the truth of the matter asserted, i.e., whether she had moved to Collins. These affidavits are admissible as an exception to

the rule against hearsay found in M.R.E. 803(3). Rule 803(3) states that statements of a declarant's intent or motive are admissible as exceptions to the hearsay rule. In addition, the comment to Rule 803(3) states, "statements which indicate intention to do something in the future are admissible to prove that the act intended took place." M.R.E. 803(3) cmt. (citing *Mutual Life Ins. Co. v. Hillmon*, 145 U.S. 285, 12 S.Ct. 909, 36 L.Ed. 706 (1892); *Hall v. Hall*, 199 Miss. 478, 24 So. 2d 347 (1946)).

¶20. The statements in the affidavits would also appear to fall within the exceptions set forth in Rule 803(24) and its counterpart Rule 804(5), as "other exceptions" to the hearsay rule. These rules state that the statement will be considered as having "circumstantial guarantees of trustworthiness" if the court determines that 1) the statement is offered as evidence of a material fact; 2) the statement is more probative on the point for which it is offered than any other evidence that the proponent can procure through reasonable efforts; and 3) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. The difference between the two rules is that Rule 804(5) requires the declarant to be "unavailable."

¶21. The affidavits in this case meet all three requirements set forth in Rules 803(24) and 804(5). The statements in the affidavits are to prove Matia's intent, which is a material fact in this case, and the proponents cannot produce more probative evidence under reasonable circumstances because the declarant is deceased. At best, the affidavits provide enough information for a jury issue.

¶22. McLeod and Walter maintain that Matia intended to move back to 315 Rebecca Road in Collins the weekend of March 25, 1995. In fact, she requested her brother to help her move some of her things from Jackson to Collins, and he was on his way to her apartment on the day of her accident. Matia's intent to return home would qualify her as a resident under the uninsured motorist coverage of her father's policy.

¶23. It does not matter if Matia made her decision in close proximity to the time of her death, as long as she had the intent of returning to her father's home. The proximity of her decision to her death does not diminish her intent. In fact, Matia's decision to move home occurring almost simultaneously with her accident and subsequent death may explain why McLeod is unable to produce significant documentation, other than sworn affidavits, that Matia intended to return home.

¶24. Further, McLeod and Walter assert that Matia never fully moved out of the house in Collins, as she maintained a bedroom there and also kept personal belongings such as photographs, stuffed animals, and clothing there. Her father and brother also assert that Matia attended church with them and other family members while she was at home in Collins and that McLeod continued to provide financial support to Matia in the form of rent, tuition, and money for bills, groceries and other expenses.

¶25. Allstate asserts Matia was not a resident under the policy because she was not a college student at the time of her death, but was only working at Shoney's, and that she was not considered, "your unmarried dependent children while temporarily away from home," as defined by the policy. However, the definition of resident in the policy never asserts that a child must be an enrolled college student to be considered temporarily away from home.

¶26. As early as September 1994, shortly after enrolling in Holmes Junior College, Matia signed a withdrawal form from the college. Matia listed the reason for her leaving school as "moving out of town (to Collins)." Perhaps she changed her mind about the situation with her boyfriend, and not being enrolled in school at the time, decided to return home. Perhaps Matia had a new boyfriend in Collins. Perhaps Matia

was living with Dextrous temporarily for financial reasons while working at Shoney's, and when the money did not come in as she expected, she decided to return home. There are many scenarios. The main question is one of intent, and in this situation, it is a question for a jury to decide.

¶27. Allstate also presented evidence that Matia acquired electric services in her name at 515 Mitchell Avenue on August 12, 1994 and that she maintained these utilities at the time of her death. In addition, Matia registered to vote in Hinds County on June 15, 1994, listing her address as 515 Mitchell Avenue, and she was issued a duplicate driver's license June 1, 1994, also listing the 515 Mitchell Avenue address. All of these facts are <u>not conclusive</u> of Matia's intent.

¶28. As to the utilities not being terminated at the time of her death, there is often an amount of major cleaning to be done to an apartment subsequent to moving furniture and other items out of the apartment, and the utilities are often left on until this clean-up procedure is completed. Matia may have decided to discontinue her electric service after she moved from Jackson and was settled in Collins. Her move could have been a gradual one, and this would also explain why the utilities had not been terminated.

¶29. As to Matia's voter registration and driver's license, these changes are often made <u>after</u> one has moved. Certainly, no one ever plans to be involved in a major automobile accident where the address listed on your driver's license six months ago would be conclusive of your intent to do something the following weekend.

¶30. In addition, Matia would most likely have given her 515 Mitchell Avenue address to the electric company, the city hall, and the department of motor vehicles in June of 1994 as <u>her intent at that time</u> was to attend Holmes Junior College. Her intent in June of 1994 has little to no bearing on her intent in March of 1995.

¶31. Allstate also asserts that Matia held the title to a 1988 Honda Accord, which lists her address as 517 Mitchell Avenue. McLeod argues that this fact has nothing to do with Matia's intent to move home, as he purchased the vehicle for her and transferred the title to her.

¶32. As stated above, it is undisputed that Matia lived with Dextrous, but the two were not married or even engaged, and there is no indication in the record of any financial support that Dextrous provided to Matia. McLeod asserts in his amended affidavit that he still provided support to Matia in the form of rent, tuition, and money for groceries and other expenses while she lived in Jackson.

## <u>CONCLUSION</u>

¶33. McLeod presented genuine issues of material facts that should be tried by a jury. The judgment of the Covington County Circuit Court is reversed, and this case is remanded to the trial court for a trial on the merits.

¶34. **REVERSED AND REMANDED.**

**BANKS, P.J., WALLER, DIAZ AND EASLEY, JJ., CONCUR. SMITH, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY PITTMAN, C.J., MILLS AND COBB, JJ.**

**SMITH, JUSTICE, DISSENTING:**

¶35. The majority holds that summary judgment was inappropriate in this case. That holding suggests that there was a genuine issue of material fact in regards to the intent of Matia McLeod to return to her parent's home. The majority opinion is based upon two inadmissible affidavits which are clearly hearsay. Finding that there is no documentation or admissible evidence to establish that Matia intended to return to her parent's home, and finding that all documentary evidence points to Matia's residency in Hinds County, summary judgment was properly granted in favor of Allstate Insurance Company.

¶36. McLeod attempted to collect insurance proceeds under the section titled Uninsured Motorists Coverage contained in Part V of his policy. The policy states that an insured person is "you and any resident relative." Additionally, under the definitions portion of the policy, a resident is defined as "a person who physically resides in your household with the intention of continuing residence there. Your unmarried dependent children while temporarily away from home will be considered residents if they intend to resume residing in your household."

¶37. All documentary evidence points in favor of Matia's residence in Hinds County, Mississippi. For example, Matia resided in a duplex located at 515/517 Mitchell Avenue, Jackson, Mississippi, from June 5, 1994 until her death; the electric utilities were in her name for the Mitchell Avenue address; Matia's driver's license was issued to her with the Mitchell Avenue address; Matia registered to vote in Hinds County giving the Mitchell Avenue address as her place of residence and listing her father's address as her previous residence; Matia's automobile title, transferred to her by her father, Robert McLeod, Jr., was issued to her at 517 Mitchell Avenue on August 9, 1994; Matia was a waitress at Shoney's in Jackson, Mississippi; and Matia was not a student at any educational institution at the time of her death. Additionally, Andrew Reeves, Director of Reeves Funeral Home, prepared the certificate of death which cited 515 Mitchell Avenue, Jackson, Mississippi, as the residence of Matia McLeod, based on the information provided to him solely by Robert McLeod, Jr.

¶38. The majority finds that the affidavits sworn to by Robert McLeod, Jr., Matia's father, and Walter McLeod, Matia's brother, establish that a genuine issue of fact exists in regards to Matia's intent to return to her parent's home. These affidavits are not competent evidence as they are inadmissible hearsay under M.R.E. 801. Under M.R.E. 801(c) "hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

¶39. As the majority correctly states, this Court employs a de novo standard of review of the trial court's grant of a summary judgment motion. *Saucier v. Biloxi Reg'l Med. Ctr.*, 708 So.2d 1351, 1354 (Miss.1998) (citing *Townsend v. Estate of Gilbert*, 616 So.2d 333, 335 (Miss.1993)). The evidence is viewed in the light most favorable to the non-moving party, who is to receive the benefit of every reasonable doubt. *Id.* The non-moving party must produce specific facts showing that there is a genuine material issue for trial. *Id.* (citing M.R.C.P. 56(e); *Fruchter v. Lynch Oil Co.*, 522 So.2d 195, 199 (Miss.1988)). "The non-moving party's claim must be supported by more than a mere scintilla of colorable evidence; it must be evidence upon which a fair-minded jury could return a favorable verdict." *Wilbourn v. Stennett, Wilkinson & Ward,* 687 So. 2d 1205, 1214 (Miss. 1996) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)).

¶40. All of the documentary evidence points to Matia's residence being in Jackson, Mississippi, not Collins, Mississippi. These affidavits are mere hearsay as her father and brother would not be allowed to testify to Matia's intent at trial. On the other hand, Matia's driver's license, voter registration, car title, place of

employment, and death certificate list the Mitchell Avenue address. Based on all of the evidence presented in the record, a fair-minded jury could not find that Matia's residence was anywhere other than Hinds County. Summary judgment was appropriately granted in favor of Allstate Insurance Company.

¶41. I respectfully dissent.

**PITTMAN, C.J., MILLS AND COBB, JJ., JOIN THIS OPINION.**

1. Some documents in the record state that the correct name of Matia's boyfriend was "Lashon" while the memorandum opinion of the trial court gives him name as "Lashou."