ISHEE, J.,
 

 for the Court:
 

 ¶ 1. An automobile accident is the genesis of the underlying lawsuit, but on appeal, we are called upon only to decide whether the James Robin Robinson Jr. is entitled to insurance benefits on his sister’s policy with State Farm Mutual Automobile Insurance Company (State Farm). The trial court found that he was not because he was not a resident in her household nor she in his household and granted summary judgment. We find no error with the trial court’s judgment and affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶2. In September 2005, James lived with his parents and brother at 493 Smith County Road, outside Mize, Smith County, Mississippi. His sister, Christy Robinson Best, lived in a trailer approximately 100 yards across the road at 444 Smith County Road.
 

 ¶ 3. A discussion of Christy’s residency is important because at the time that her brother James had an accident on September 6, 2005, Christy had an insurance policy with State Farm which contained un-derinsured motorist coverage that would cover James if it were shown that Christy resided with her brother at 493 Smith County Road or he with her.
 

 ¶ 4. State Farm took Christy’s deposition in August 2008, and she was adamant that she was not living with her parents at 493 Smith County Road at the time of James’s accident; instead, she was living in a trailer home approximately 100 yards across the road at 444 Smith County Road. When her deposition was taken, Christy had divorced her husband Christopher Dewayne Best, and was living with her boyfriend and their daughter at 69 Mimosa Lane in Mount Olive, Mississippi, which is in Covington County. She said that she had lived there for approximately two years. Christy testified that she lived with her parents at 493 Smith County Road when she was growing up, but she had moved from their home to a trailer home approximately 100 yards across the road at 444 Smith County Road. When she and Best were dating, she moved in with him in Mendenhall, Mississippi; then they both moved back to 444 Smith County Road. She was married to Best for three years, and she testified that she considered 444 Smith County Road to be her residence. She filed for divorce in August 2005 and moved temporarily to Raleigh, Smith County, Mississippi with a girlfriend for approximately a month while her divorce was proceeding. Christy testified that at the time her brother had his accident, she was temporarily living in Raleigh, but she considered 444 Smith County Road to be her home address.
 

 ¶ 5. When asked about what she thought of her residence at 444, she stated:
 

 Q. When you talk about your permanent home where all of your — the majority of your belongings and your personal effects [are] at 444?
 

 A. Yes, sir.
 

 Q. Was it your intent to — that this was your permanent home?
 

 A. I intended that that was where I was going to live.
 

 ¶ 6. She said that after the accident, she moved a few personal belongings to her parents’ home to help take care of James, but she was firm in her testimony that she never resided in her parents’ home on a full-time basis, stating:
 

 A. I went over there every day to help.
 

 
 *418
 
 Q. To help her (their mother) with him?
 

 A. To help my brother, because he cannot feed hisself [sic] by hisself [sic] or anything like that, so I would go over there every day and help, even after work or if I was off.
 

 Q. But then again, once you finished that for the day, you would go back to 444?
 

 A. Yes, sir.
 

 ¶ 7. After James recovered, Christy said she moved from 444 Smith County Road to her boyfriend’s house on Mimosa Lane in Mt. Olive; by this time, her divorce was finalized, and this was where she was living when her deposition was taken.
 

 ¶ 8. State Farm filed a motion for summary judgment based on its contention that James was not a resident of Christy’s household at the time of the accident. In its motion, State Farm stated that the driver of the utility trailer that hit James was ensured with State Farm and that the policy limits of $25,000 had been tendered to James. State Farm noted that James was covered by medical and short-term disability insurance through his employer. Also, two other insurance companies which were defendants, had paid James. However, State Farm’s motion for summary judgment asserted that Christy’s State Farm uninsured-motorist policy did not cover James because he was not a member of her household when the accident occurred nor was she a member of his household. Instead, State Farm stated that at the time of the accident, Christy was living temporarily with a friend in Raleigh, but she returned to her own residence at 444 Smith County Road after the accident. Further, State Farm asserted that Christy’s deposition showed that while she helped take care of her brother at their parent’s home, she always went back to her home across the street afterwards.
 

 ¶ 9. State Farm cited
 
 Mercer v. Progressive Gulf Insurance Co.,
 
 885 So.2d 61, 66-67 (¶ 22) (Miss.2004) for the proposition that when there is no genuine issue of material fact as to whether a person is a resident under an insurance policy, summary judgment is proper. The trial court heard the motion for summary judgment on February 9, 2009. State Farm offered Christy’s deposition testimony at the hearing. The circuit judge asked the attorney for James what James and Christy’s parents had said about Christy’s residence, and the attorney responded that he did not know as their testimonies had not been taken. The circuit judge found that the summary judgment motion was “tentatively sustained” for State Farm, but the judge gave James thirty days from February 6, 2009, in which to obtain counter-affidavits to support James’s contention. The order provided that if the counter-affidavits were not forthcoming, then the motion would be finally sustained and the case dismissed in favor of State Farm. On March 9, 2009, the circuit court entered an order which stated that James had not produced any counter-affidavits; thus, per the court’s previous order, summary judgment was granted in favor of State Farm.
 

 ¶ 10. On March 11, 2009, after the summary judgment had been entered in favor of State Farm, James filed a document styled response to motion for summary judgment that had affidavits attached from James’s mother, father, brother, and a man who claimed he was dating Christy; all swore in their affidavits that Christy was residing with her parents at the time of James’s accident.
 

 ¶ 11. This tardy filing by James caused State Farm to file a Supplemental Motion for Summary Judgment and Motion to Strike Plaintiffs Response as Untimely, Inadequate, and Unresponsive. Citing
 
 McMichael v. Nu-Way Steel and Supply,
 
 
 *419
 

 Inc.,
 
 563 So.2d 1371, 1375 (Miss.1990), State Farm argued that James could not “just sit back and remain silent,” but he must “bring forward ‘significant probative evidence demonstrating the existence of a triable issue of fact.’ ” In addition, State Farm pointed out that James had thirty days from February 6, 2009, in which to obtain and file counter-affidavits to support his claim, but he did not file anything; instead, his attorney informed the attorney for State Farm that he was going to petition the court for five addition days in which to file his counter-affidavits. A copy of James’s motion for additional time was attached to State Farm’s pleading, but it was not stamped filed. However, a docket entry on March 9 shows a motion for additional time was filed. There is no indication that the motion was ever set for a hearing or that a ruling was ever obtained on the motion. Instead, on March 13, 2009, James filed a document entitled Plaintiffs Response to State Farm Mutual Automobile Insurance Company’s Supplemental Motion for Summary Judgment and Motion to Strike Plaintiffs Response as Untimely. In this untimely filed document, James argued that under Rule 6(b) of the Mississippi Rules of Civil Procedure, the circuit court has discretion to enlarge the time in which a filing is due, and he argued that State Farm suffered no prejudice due to his late filing.
 

 ¶ 12. The circuit court considered the late filing and a letter brief submitted in response by State Farm. On May 5, 2009, the circuit court again ruled that State Farm should be granted summary judgment. In the letter to the attorneys advising them of his ruling, the circuit judge said he credited the testimony of Christy who under oath said that “she did not live with her parents on a permanent basis either prior to or following the accident, nor did she express a clear intent to take up residence with them on a permanent basis.” Therefore, the circuit court found James was not entitled to benefit from Christy’s State Farm uninsured-motorist policy coverage. The order concluded that the earlier March 9, 2009, order was vacated and held for naught.
 

 ¶ 13. It is from this May 5, 2009, order that James appeals claiming that it was error for the circuit court to grant State Farm’s motion for summary judgment as a material question of fact existed as to whether the underinsured-motorist coverage was available to James.
 

 ANALYSIS
 

 ¶ 14. This Court applies a de novo standard of review to the grant of summary judgment.
 
 Bullard v. Guardian Life Ins. Co. of Am.,
 
 941 So.2d 812, 814 (¶ 6) (Miss.2006). Pursuant to Rule 56 of the Mississippi Rules of Civil Procedure, summary judgment “shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” M.R.C.P. 56(c). The court views the evidence in the light most favorable to the non-moving party.
 
 Univ. of Miss. Med. Ctr. v. Easterling,
 
 928 So.2d 815, 817 (¶ 8) (Miss.2006). “The moving party bears the burden of demonstrating there is no genuine issue of material fact.”
 
 Id.
 

 ¶ 15. As we are dealing with a policy of insurance and whether coverage should be extended under the policy’s uninsured-motorist provision, it is necessary that we review the relevant sections of the Mississippi’s Uninsured Motorist Act. In the definition section of the Act, the term insured is defined as “the named insured,” who in this case would be Christy, and, also
 
 “while resident of the same household,
 
 the
 
 *420
 
 spouse of any such named insured and relatives of either....” Miss.Code Ann. § 83-ll-103(b) (Supp.2009) (emphasis added). Therefore, under the statute, a relative of the named insured residing in the same household may be considered an insured for purposes of uninsured-motorist coverage.
 

 ¶ 16. The specific language of Christy’s State Farm policy must be examined. It provides, under the uninsured-motorist section, that the “insured” is defined as “1. you; 2. your spouse; [and] 3. your relatives .... ” The policy then describes a relative as “a person related to you or your spouse by blood, marriage or adoption
 
 who resides primarily with you.”
 
 (Emphasis added). It is undisputed that James is Christy’s brother; however, that fact alone does not make him a relative entitled to coverage under her policy unless he can prove that she resided primarily with him at the time of the accident or he with her. The fact that she was not residing in his household at the time of the accident is the basis for the circuit court granting State Farm’s motion for summary judgment.
 

 ¶ 17. James argues on appeal that Christy was a resident of the same household as him at the time he was injured; thus, he was covered as an insured under section 83-ll-103(b). James cites
 
 Aetna Casualty and Surety Co. v. Williams,
 
 623 So.2d 1005, 1008 (Miss.1993) for the general proposition that courts must interpret the terms of an insurance policy and the statutes from which they derive liberally in favor of providing coverage for the insured. James also cites
 
 McLeod v. Allstate Insurance Co.,
 
 789 So.2d 806, 810 (¶¶ 13-14) (Miss.2001) for the proposition that the term “resident” should be given a broad reading since the Legislature in defining “insured” chose the more inclusive term “residence” as opposed to “domicile.” In
 
 McLeod,
 
 the court noted that a person may have only one domicile, but a person may simultaneously have multiple residences.
 
 Id.
 
 at (¶ 13). “Once established^] a person’s domicile remains intact ‘absent a clear indication of intent to abandon the existing domicile and to establish another.’ ”
 
 Id.
 
 at (¶ 14);
 
 Miss. Band of Choctaw Indians v. Holyfield,
 
 490 U.S. 30, 48, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989) (a person can reside at one place but be domiciled at another). The
 
 McLeod
 
 court explained that “residency is a more flexible concept, and permanency is not a requirement for residency.”
 
 McLeod,
 
 789 So.2d at 810 (¶ 14). “Even a temporary and transient place of dwelling can qualify.”
 
 Id.
 

 ¶ 18. What James has failed to do is to offer any evidence in opposition to Christy’s testimony that she maintained her residence at 444 Smith County Road, in a trailer home approximately 100 yards across the street from her parents’ home at 493 Smith County Road where her brother lived; and she never indicated that she intended to abandon her residence at 444 Smith County Road. Christy’s testimony was unchallenged that she was living temporarily with a friend in Raleigh awaiting her divorce when her brother was injured, but at that time, she considered 444 Smith County Road to be her residence. She testified that she did help take care of her brother at her parents’ home after his accident, but she testified clearly that she considered 444 Smith County Road as her residence. The following testimony from her deposition is illustrative:
 

 Q. And again, we’ve talked about your intent. Did you consider 493 to be your residence from the time you got married in 2001 up until the time and after the accident of September of '05?
 

 A. I considered it to be 444.
 

 Q. Did you ever move into — and by moving, taking your personal belongings
 
 *421
 
 and move into 49B after September of '05?
 

 A. I had just a few clothes and a few things over there, but all my stuff was at 444.
 

 Q. And after your brother’s accident, did you go across the street and help your mother and your brother to care for him on a periodic basis?
 

 A. Yes, sir.
 

 Q. Did you ever reside in that house on a full-time basis?
 

 A. No, sir, not on a full time.
 

 Q. And when I use the word occasionally went across the street to help her, was that the correct description?
 

 A. I occasionally went over there, but I had all my stuff and I resided over there at 444. And not too long after he got better I moved to 69 [Mimosa Lane in Mount Olive],
 

 ¶ 19. While considering the motion for summary judgment, the circuit judge had before him only the deposition testimony of Christy and her insurance policy, which defined the insured to include a relative, but which further defined a relative as “a person related to you or your spouse by blood, marriage or adoption who
 
 resides primarily with you.”
 
 (Emphasis added). The circuit court found that Christy never resided with James after his accident; thus, he was not covered by her policy.
 

 ¶20. Considering this evidence in the light most favorable to James, we find the circuit court did not err in granting State Farm’s motion for summary judgment. James totally failed to show that he was an insured under his sister’s policy. The undisputed testimony was that it was Christy’s intent to make 444 Smith County Road her home during the relevant time periods and that James never lived with her nor she with him. It would be a distortion of the concept of residency under these facts to consider the time she spent caring for her brother at her parents’ home during the day as establishing residency.
 

 ¶ 21. In
 
 Williams,
 
 the supreme court held that whether a person is a “resident” at a particular location is “a practical question which turns on the degree of one’s attachment to a particular place of abode.”
 
 Williams,
 
 623 So.2d at 1010. In
 
 Johnson v. Preferred Risk Automobile Insurance Co.,
 
 659 So.2d 866, 872 (Miss.1995), which is cited by James, the supreme court held that the two most often discussed concepts in defining “resident” are: (1) presence; and (2) an intent to remain for some time. The
 
 Johnson
 
 court stated the word “resident” means a person has more than just a “mere physical presence, and that the transient visit of a person for a time to a place does not make him or her a resident while there.”
 
 Id.
 
 The court held that resident “imports a fixed abode for the time being, as Contra distinguished from a place of temporary abode” along with an intent to remain there permanently “or at least for some time.”
 
 Id.
 

 ¶ 22. The only evidence that could be construed as evidence of Christy’s making 493 Smith County Road her home were her visits to 493 Smith County Road to help care for her brother. However, Christy’s presence in the same home as James during these time periods was to help her mother take care of her brother. She testified that she would leave her home and go across the street and help; then she would return to her home. Looking at such a situation suggests a transient visit by Christy to 493 Smith County Road.
 

 ¶ 23. James tries to argue that he has affidavits from his mother, father, brother and friend which all say that Christy was residing at 493 Smith County Road on the date of the accident. However, these affidavits were not a part of the
 
 *422
 
 record that the circuit court considered as they were not timely filed. On February 9, 2009, the circuit court entered an order tentatively granting State Farm’s summary-judgment motion after James offered no evidence. For a reason we cannot detect from the record, the circuit court gave James an additional thirty days from the date of the order, February 6, 2009, to file counter-affidavits to support his contentions. The order said that if such counter-affidavits were not forthcoming within thirty days, then the motion for summary judgment would be finally granted, and State Farm would be dismissed from the lawsuit. On March 11, 2009, a response to the motion for summary judgment was filed with four purported counter-affidavits attached. However, this filing was late and could not be considered by the circuit court.
 
 [1]
 
 The supreme court has said that Rule 6(b)
 
 [2]
 
 of the Mississippi Rules of Civil Procedure prohibits a judge from receiving documents filed after the specified period, unless the failure to act was the result of excusable neglect.
 
 In re Last Will and Testament of Smith,
 
 910 So.2d 562, 567-68 (¶ 22) (Miss.2005) (citing
 
 Richardson v. APAC-Miss., Inc.,
 
 631 So.2d 143, 146 (Miss.1994)). Otherwise, the counter-affidavits will be stricken.
 
 Id.
 
 James filed no motion showing excusable neglect. Therefore, the circuit court could not consider the untimely filed counter-affidavits.
 

 ¶ 24. In a letter to the attorneys for both parties, the judge explained why he had ruled in favor of State Farm. He said that it was his opinion, based upon the testimony under oath of Christy, that she neither lived with her parents on a permanent basis either prior to or following the accident, nor did she express a clear intent to take up residence with them on a permanent basis. Therefore, he found that summary judgment should be granted.
 

 ¶ 25. We find nothing in the record which disputes the circuit judge’s finding. Therefore, we find that James’s appeal is without merit.
 

 ¶ 26. THE JUDGMENT OF THE CIRCUIT COURT OF SMITH COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., BARNES, ROBERTS AND CARLTON, JJ„ CONCUR. MAXWELL, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. IRVING, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. GRIFFIS, J., NOT PARTICIPATING.
 

 [1]
 

 . The thirty days ran on March 8 which was a Sunday making the filing due on the following day March 9. The docket shows that on March 9, James filed a motion for additional time. State Farm included in its filings an unfiled copy of the motion, but we cannot be certain that the docket entry is the motion for additional time which James claims was filed. In any event, the motion is of no moment because James never gained a ruling on the motion and instead just filed the counter-affidavits late.
 

 [2]
 

 . Rule 6(b) provides in pertinent part: "When by these rules or by notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefore is made before the expiration of the period originally prescribed ... or (2) upon motion made after the expiration of the specified period permit the act to be done where failure to act was the result of excusable neglect.... M.R.C.P. 6(b).”