# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CA-00344-COA

**CONSTANCE GEORGEN**                                                    **APPELLANT**

**v.**

**ESTATE OF MONIQUE BROWN-BARRETT**                     **APPELLEES**
**AND MICHAEL BARRETT**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/02/2023 |
| TRIAL JUDGE: | HON. ELEANOR JOHNSON PETERSON |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | ROGEN K. CHHABRA |
| ATTORNEYS FOR APPELLEES: | HARRIS FREDERICK POWERS III PATRICK M. TATUM |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 9/17/2024 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**McCARTY, J., FOR THE COURT:**

¶1.     A woman was living at her friend's house for an extended period of time. One day during her stay, her friend propped a wooden gate up against the doorway between the kitchen and the living room. The woman attempted to step over the gate, but it fell—tripping her and causing her to fall and suffer injuries. She filed a premises-liability lawsuit against her friend and the friend's husband as the homeowners. The trial court granted summary judgment in favor of the homeowners and dismissed the case, ruling that the gate did not constitute a dangerous condition.

¶2.     Reviewing the record in the light most favorable to the woman, we find material facts

were in dispute regarding the nature of the gate as a dangerous condition. We reverse and remand for further proceedings.

## BACKGROUND

¶3.     Constance Georgen was living at the home of her friend Monique Brown-Barrett and Monique's husband Michael Barrett. On the date in question, Monique was in the kitchen and placed a wooden safety gate[1] in the doorway between the kitchen and living room as a barricade. Connie was standing in the living room talking to Michael, who was sitting in a recliner. She then turned to go into the kitchen, saw the baby gate in the doorway, and attempted to step over the gate. But when Connie was mid-step, the gate "fell and became entangled between her legs, causing her to suffer a serious fall." She sustained injuries to her shoulder, knee, head, and body.

¶4.     Connie subsequently filed a complaint against Monique and Michael in the Hinds County Circuit Court. Her complaint asserted a negligence claim for premises liability related to her trip-and-fall incident with the gate at the Barretts' home. The Barretts filed a motion for summary judgment, arguing the gate was not a dangerous condition. They further alleged that even if it was a dangerous condition, they did not breach their duty because Connie admitted that she saw the gate and that she tripped while stepping over it.

---

[1] For clarification, we note that Monique testified, "we call it the little doggy gate." Connie also testified at her deposition that Monique "has a big dog and then she had a little dog. . . . That's why the gate was up, they was – she was separating them so they could eat." Because both of the parties' briefs use the term "baby gate" when referring to the object placed as a barricade in the doorway that Connie tripped over, we will call it a baby gate.

¶5.     Unfortunately, Monique passed away during the pendency of this case and prior to the trial court's ruling on summary judgment. Monique's Estate was substituted as a party defendant. Subsequently, the trial court granted summary judgment in favor of Michael and the Estate,

> finding that: (1) Georgen 'admitted she saw the plainly obvious baby gate'; (2) Georgen 'further admitted that she tripped and fell while attempting to step over it'; (3) 'a baby gate is not a dangerous condition in/of itself'; (4) 'the baby gate was an obvious condition in plain sight'; (5) the Barretts 'had no duty to warn her of the gate'; and (6) 'no duty was breached.'

Connie appealed from the court's order.

## STANDARD OF REVIEW

¶6.     On appeal, "[t]he grant of summary judgment is reviewed de novo." *Loving v. MS Eye Care P.A.*, 381 So. 3d 1111, 1113 (¶6) (Miss. Ct. App. 2024). "Summary judgment is proper only when no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law." *Nolan v. Grand Casinos of Biloxi LLC*, 309 So. 3d 572, 575 (¶8) (Miss. Ct. App. 2020) (quoting *Owen v. Pringle*, 621 So. 2d 668, 670 (Miss. 1993)). "Summary judgment is inappropriate where there are undisputed facts which are susceptible to more than one interpretation." *Venture Inc. v. Harris*, 307 So. 3d 427, 432 (¶16) (Miss. 2020) (quoting *McLeod v. Allstate Ins. Co.*, 789 So. 2d 806, 809 (¶8) (Miss. 2001)).

¶7.     In "determin[ing] whether there is a genuine issue of material fact, we will review 'all admissions, answers to interrogatories, depositions, affidavits, and any other evidence, viewing the evidence in a light most favorable to the non-movant[.]'" *Nolan*, 309 So. 3d at

3

575 (¶8) (quoting *Elliott v. AmeriGas Propane L.P.*, 249 So. 3d 389, 395 (¶22) (Miss. 2018));

*see also* MRCP 56(c). "If any triable issues of material fact exist, the trial court's decision

to grant summary judgment will be reversed." *Brooks v. Jeffreys*, 368 So. 3d 356, 361 (¶10)

(Miss. Ct. App. 2023) (quoting *Chaffee ex rel. Latham v. Jackson Pub. Sch. Dist.*, 270 So.

3d 905, 907 (¶10) (Miss. 2019)).

## DISCUSSION

¶8.     Connie alleges that several material facts are in dispute: whether the unsecured baby

gate constituted a dangerous condition, whether the Barretts breached their duty as

homeowners and created a dangerous condition by setting up an unsecured baby gate behind

Connie, whether Connie had knowledge of the danger, and whether the Barretts had a duty

to warn her.

¶9.     We find the issue involving the existence of a dangerous condition to be dispositive

and warrants reversal. As a result, we do not reach Connie's remaining issues on appeal.

¶10.    "To prevail in . . . a premises-liability case, the plaintiff must prove each element of

negligence: duty, breach of that duty, proximate causation, and damages or injury." *Venture*,

307 So. 3d at 432 (¶19) (quoting *Bailey Lumber & Supply Co. v. Robinson*, 98 So. 3d 986,

993 n.3 (Miss. 2012)). For premises liability claims, "the landowner's duty to the injured

person depends on whether the person was an invitee, licensee, or trespasser at the time of

the injury." *Keckley v. Estes Equip. Co.*, 276 So. 3d 1230, 1239 (¶31) (Miss. Ct. App.

4

2018).[2] "If the circumstances surrounding a person's entry onto or presence upon property are in dispute, then the determination of which status a particular plaintiff holds can be a jury question." *Id.* at 1239-40 (¶31) (quoting *Payne v. Rain Forest Nurseries Inc.*, 540 So. 2d 35, 37 (Miss. 1989)).

¶11.    In the order granting summary judgment, the trial court stated Connie alleged she was an invitee but also made a point to state that "the Barretts do not concede this point."[3] On appeal, Connie contends she was an invitee at the time of the incident because Monique allowed her to stay at their house in exchange for taking care of Monique's mother and helping around the house. The Barretts explicitly reiterate in their appellate brief that they do not concede that Connie was an invitee. Rather, Monique stated that Connie was staying at their house as a social guest and visitor. Her testimony specifically refuted that she and Connie had any agreement for Connie to take care of Monique's mother in exchange for room and board and denied that Connie helped around the house or with chores.

¶12.    The facts surrounding Connie's status appear to be in dispute. Because the circumstances surrounding Connie's presence at the home of the Barretts are in dispute, the

---

[2] "[A]n invitee is a person who goes upon the premises of another in answer to the express or implied invitation of the owner or occupant for their mutual advantage." *Keckley*, 276 So. 3d at 1239 (¶31) (quoting *Clark v. Moore Mem'l United Methodist Church*, 538 So. 2d 760, 762-63 (Miss. 1989)). "[A] licensee is one who enters upon the property of another for his own convenience, pleasure or benefit pursuant to the license or implied permission of the owner." *Id.* (quoting *Clark*, 538 So. 2d at 763).

[3] The trial court's order, however, does not make a specific finding on the determination of Connie's status as a matter of law. Nevertheless, viewed in its entirety, the order implies that the trial court considered Connie an invitee.

determination of which status Connie holds arguably may be a jury question. *See Keckley*, 276 So. 3d at 1239-40 (¶31).

¶13.    For purposes of this appeal, viewing the facts in Connie's favor as required, we proceed on the basis that Connie was an *invitee* as she alleges. The landowner "owes a duty to an *invitee* to keep the premises in a reasonably safe condition and to warn the invitee of dangerous conditions that are not readily apparent." *Venture*, 307 So. 3d at 433 (¶22) (emphasis added) (quoting *Clinton Healthcare LLC v. Atkinson*, 294 So. 3d 66, 71 (¶9) (Miss. 2019)).

¶14.    The main issue on appeal is the question of whether a dangerous condition existed. "[F]or a premises-liability claim to succeed, a dangerous condition must first exist." *Carroll v. Singing River LLC*, 309 So. 3d 567, 570 (¶7) (Miss. Ct. App. 2020) (quoting *Patterson v. Mi Toro Mexican Inc.*, 270 So. 3d 19, 21 (¶7) (Miss. Ct. App. 2018)). "There is no specific definition of a 'dangerous condition,'" but Mississippi caselaw guides that "[a] condition may be considered 'dangerous' in even the simplest of circumstances." *Babin v. Wendelta*, 368 So. 3d 363, 370 (¶24) (Miss. Ct. App. 2023).[4] The issue of "[w]hether a dangerous condition exists may be a question of fact for the jury." *Keckley*, 276 So. 3d at 1236 (¶18).

¶15.    The dangerous condition that Connie alleges in this case is two-fold. She acknowledges that "the existence of the gate was not dangerous" but claims the condition of

---

[4] "[Property] owners are not strictly liable for injuries occurring on the premises, nor are they insurers of their invitees' safety." *McCullar v. Boyd Tunica Inc.*, 50 So. 3d 1009, 1012 (¶14) (Miss. Ct. App. 2010).

the gate became hazardous because (a) the gate was unsecured and merely leaning against the doorway, and (b) the gate was set up behind Connie while her back was to the doorway.

¶16.    The trial court concluded: "[A] baby gate is not a dangerous condition in [and] of itself." In its order, the trial court found that Connie "admitted that she saw the plainly obvious baby gate" and "admitted that she tripped and fell while attempting to step over it." Consequently, the court ruled that as a matter of law the facts did not support her claim of negligence to hold the Barretts liable under premises-liability law.

¶17.    But that is not the crux of Connie's claims. Her argument is not that the commonly encountered object of the baby gate *itself* was inherently dangerous. Instead, her argument is that the gate was unexpectedly placed, which created a trip hazard. She also argues she was surprised by the gate. Precedent from this Court has reversed two orders granting summary judgment in similar situations.

¶18.    In the first case, *Keckley*, this Court reviewed the claim of a customer who sued a convenience store on a premises-liability claim. 276 So. 3d at 1233 (¶2). According to the customer, she was walking toward the store's entrance and attempted to step over a piece of yellow caution tape. *Id*. at 1234 (¶6). The caution tape was lying on the ground when a sudden gust of wind blew the tape up and created a "tripwire," and she fell. *Id*. The customer claimed that when she approached the tape, it appeared to be "loose," not tied to anything, and not demarcating an active construction area or other danger. *Id*. But she said that after the wind blew the tape off the ground, she then realized the tape was tied to a pole on one

7

side of the sidewalk and to a brick pillar on the other side. *Id*.

¶19. The customer's premises-liability action alleged the convenience store failed to maintain the premises in a reasonably safe condition. *Id*. at 1234 (¶10). The circuit court granted summary judgment in favor of the store, "find[ing] that the open and obvious yellow caution tape at issue is not an unreasonably dangerous condition as a matter of law." *Id*. at 1235 (¶13).

¶20. On appeal, the focus was on the fact that the tape functioned as a "tripwire." *Id*. at 1237 (¶21). This Court found, "Keckley clearly testified that she tripped on this 'tripwire,'" and "[a] reasonable jury could find that a tripwire is a dangerous condition." *Id*. The majority opinion authored by now-Presiding Judge Wilson placed additional emphasis on "Keckley['s] testi[mony] that the tape suddenly, unexpectedly, and without warning rose up slightly and caused her to trip and fall." *Id*. at 1238 (¶23). Crucially, we reckoned "[t]he caution tape itself was not 'hidden[.]'" *Id*. Yet that did not halt the analysis. *Id*. It was specifically that "the *tripwire-like effect* of the caution tape was 'hidden and surprising,'" which raised the caution tape to the level where it could constitute a dangerous condition. *Id*. (emphasis added). We ultimately concluded genuine issues of material fact were in dispute that precluded summary judgment, and we reversed and remanded for further proceedings. *Id*. at 1241 (¶37).

¶21. Just as the caution tape itself was not inherently dangerous, the baby gate here is not inherently dangerous—and the parties are in agreement that the object of the gate itself is not

8

dangerous. Akin to *Keckley*, a reasonable jury could find that the circumstances of the gate here had a "tripwire-like effect." Like the customer in *Keckley* admitted to seeing and trying to step over the yellow caution tape, Connie admitted to seeing the gate and attempting to step over it. Similar to the customer's testimony that she perceived the caution tape lying on the ground looking loose but did not know the tape was secured by ties to poles at both ends of the tape, Connie claims she realized that there was a baby gate set-up in the doorway between the kitchen and living room but did not know the gate was unsecured and merely leaning on the door frame without the tension-locking mechanism.

¶22. Connie testified that as she attempted to step over it, "the gate didn't have leverage and fell so fast," her foot got caught in the gate, and then "she just kind of tumbled into it." If the unsecured, propped-up condition of the gate was "hidden and surprising" and created a tripwire-like effect for the baby gate, a reasonable jury could find that the baby gate was a "dangerous condition."

¶23. We also reversed the grant of summary judgment in *Brooks v. Jeffreys*, 368 So. 3d 356, 358 (¶1) (Miss. Ct. App. 2023). There, a homeowner hired a company to clean her home. *Id*. at (¶2). While the owner was on the phone, the employees were at her house cleaning. *Id*. at (¶3). One mopped behind her, out of her field of vision. *Id*. When the homeowner turned around, she slipped and fell on the wet floor. *Id*. The trial court granted summary judgment in favor of the cleaning company, finding the homeowner should have known the floor was wet. *Id*. at (¶6).

9

¶24. On appeal, this Court found that "[t]here [was] conflicting evidence whether Brooks was aware the area behind her had been mopped and was wet before she turned around." *Id.* at 362-63 (¶18). Chief Judge Barnes, writing for a unanimous Court, explained, "If [Brooks] did not know the floors were wet, it would not be a danger she expected." *Id.* at 363 (¶18). Summary judgment was improper, in part, because "a question of material fact exists as to whether the Defendant created a dangerous condition when the [company's] employees mopped behind Brooks after she went to [a] credenza, leaving a damp floor upon which she slipped." *Id.* at 362 (¶15).

¶25. While *Brooks* involved a claim for general negligence and not premises liability, we find parallels in today's case. Just as the dangerous condition was created behind the homeowner in *Brooks*, the baby gate was set up behind Connie's back. Connie testified under oath that she was not looking when the baby gate was set up and did not see Monique lean the gate against the doorway. Taking the facts in the light most favorable to the non-movant, if Connie did not know the baby gate was blocking her path and unsecured, a reasonable jury could find it was a dangerous condition.

¶26. Our de novo review of the record reveals that this case involves contradictory testimony from the parties and disputed facts about the *effect* of the admittedly unsecured gate. More specifically, genuine issues of material fact exist as to whether the unsecured baby gate was an unreasonably dangerous condition. "When we review an order granting summary judgment, 'it is not our duty to weigh the competing evidence; it is our duty to determine if

10

there is conflicting evidence for trial.'" *Keckley*, 276 So. 3d at 1241 (¶36) (quoting *Est. of Johnson v. Chatelain ex rel. Chatelain*, 943 So. 2d 684, 687 (¶8) (Miss. 2006)). "If the undisputed facts can support more than one interpretation, then this Court, 'will not hesitate to reverse and remand for a trial on the merits.'" *Venture*, 307 So. 3d at 432 (¶16) (quoting *McLeod*, 789 So. 2d at 809). Accordingly, we find summary judgment was improper at this stage.[5]

¶27. Because we find the issue of the existence of a dangerous condition dispositive and warrants reversal, our analysis ends here. As such, we do not reach Connie's second question on appeal as to whether there were material facts in dispute regarding the Barretts' alleged breach of duty owed to Connie.

**CONCLUSION**

¶28. Viewing the record in the light most favorable to Connie, we find a genuine issue of material fact existed as to whether the baby gate was a "dangerous condition" for the purposes of premises-liability law. More specifically, the facts are not conclusive as to whether a baby gate that was not set up in a secure manner and was placed behind Connie

---

[5] To the extent the separate opinion views Connie's injuries as a result of her own negligence and not the result of Monique's actions, this presents a classic case of comparative negligence that is for a jury to resolve. *See* Miss. Code Ann. § 11-7-15 (Rev. 2019) ("the fact that the person injured . . . may have been guilty of contributory negligence shall not bar a recovery, but damages shall be diminished by the jury in proportion to the amount of negligence attributable to the person injured"); *Jones v. Wal-Mart Stores E. LP*, 187 So. 3d 1100, 1106 (¶17) (Miss. Ct. App. 2016) (a defense that the dangerous condition was seen by the plaintiff is an issue that "should be considered by the jury under a comparative negligence standard").

constitutes a hazardous condition. Because there are material facts in dispute, we reverse and remand for further proceedings consistent with this opinion.

¶29.   **REVERSED AND REMANDED.**

**McDONALD, LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR. CARLTON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, C.J., AND WILSON, P.J.  WESTBROOKS, J., NOT PARTICIPATING.**

**CARLTON, P.J., DISSENTING:**

¶30.   The majority finds that reversal of the circuit court's order granting summary judgment in the Barretts' favor is warranted due to the existence of genuine issues of material fact as to whether the unsecured baby gate in this case constituted a dangerous condition. I disagree for the reasons addressed below.

¶31.   Like the majority, I proceed on the basis that Connie was an invitee as she alleges. As the majority recognizes, a premises owner "owes a duty to an invitee to keep the premises in a reasonably safe condition and to warn the invitee of dangerous conditions *that are not readily apparent*."  Maj. Op. at ¶13 (emphasis added; emphasis on "invitee" omitted) (quoting *Venture Inc. v. Harris*, 307 So. 3d 427, 433 (¶22) (Miss. 2020)).  A premises owner "is not liable for injuries caused by conditions which are not dangerous or which are or should be known or obvious to the [invitee]."  *Wal-Mart Stores Inc. v. Littleton*, 822 So. 2d 1056, 1058-59 (¶9) (Miss. Ct. App. 2002).  I also find particularly relevant here the principle that "an invitee is still required to use in the interest of his own safety that degree of care and prudence which a person of ordinary intelligence would exercise under the same or similar

circumstance." *Stephens v. City of Gulfport*, 379 So. 3d 399, 407 (¶27) (Miss. Ct. App. 2024).

¶32.    In this case, I recognize that Connie does not assert that the baby gate *itself* is a dangerous condition.  Rather, as the majority has summarized, Connie asserts that the baby gate became hazardous "because (a) the gate was unsecured and merely leaning against the doorway, and (b) the gate was set-up behind Connie while her back was to the doorway."

¶33.    I find that these assertions regarding the "hazardous" nature of the baby gate to be nonsensical based on two undisputed facts: Connie admitted that she saw the baby gate; and—more importantly—Connie admitted that she tripped and fell *while attempting to step over it*.  The baby gate was open and obvious, and by its very nature it is not meant to be stepped over. A baby *gate* is just that: a gate used to obstruct passage through an entry way, as it was used in this case.

¶34.    In short, I find that the baby gate was not a dangerous condition, and regardless if it was leaning against the doorframe or tension-secured, the risk of stepping over the gate was plainly open and obvious.  Connie admitted that she saw it.  Nevertheless, she chose to attempt to step over the gate instead of moving it or attempting to open the gate.  I find that the Barretts had no duty to warn Connie of the danger of tripping over the gate under these circumstances. As noted, Connie must exercise "that degree of care and prudence which a person of ordinary intelligence would exercise under the same or similar circumstance." *Stephens*, 379 So. 3d at 407 (¶27).  Connie failed to do so here.  Accordingly, I find that

13

summary judgment in the Barretts' favor should be affirmed.

**BARNES, C.J., AND WILSON, P.J., JOIN THIS OPINION.**